UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE THIRD-PARTY SUBPOENA TO PRODUCE DOCUMENTS | Case No._____ |
| GREGORY THORPE and BLAIR HAMRICK, |  |
| Plaintiffs, | No. 1:12-cv-11632-RWZ<br>Pending in the DISTRICT OF MASSACHUSETTS |
| v. |  |
| KEITH F. CROSS, JOSEPH F. BENNETT, and CROSS & BENNETT L.L.C., |  |
| Defendants. |  |

## NON-PARTY PHILLIPS & COHEN LLP'S MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER RE: SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     SUMMARY OF FACTS AND PROCEDURAL HISTORY ............................3

    A.      The GlaxoSmithKline Lawsuits.................................................................3

    B.      Phillips & Cohen's Tangential Relationship to this Lawsuit and Thorpe
        and Hamrick's Subpoena ..........................................................................5

III.    ARGUMENT .....................................................................................................8

    A.      Summary of Applicable Law.....................................................................8

        1.      Discovery Is Limited to Information Relevant to the Claims and
             Defenses Presented in the Case at Bar .......................................8

        2.      A Court Must Limit Discovery if Its Burden Outweighs Its Benefit........10

        3.      The Work Product Doctrine Protects P&C's Internal Litigation
             Communications from Production...........................................................12

    B.      P&C Should Not Be Required to Produce or Log Documents Relating
        Exclusively to P&C (Requests No. 4, 21-26) .......................................17

        1.      Requests 4 and 21-26 Seek Only Irrelevant Information...........................17

        2.      Requests 4 and 21-26 Impose Undue Burdens and Seek Protected
             Work Product .......................................................................................20

    C.      P&C Should Not Be Required to Search for or Produce Documents
        Equally Available to the Parties (Requests 1, 7, 9, 13, 15, 27)...............22

    D.      P&C Should Not Be Required to Produce or Log Work-Product
        Communications with the Government (Requests 5, 11, 17, 19) ..........25

    E.      P&C Should Not Be Required to Produce or Log Work Product
        "Reflecting or Relating to" Communications with C&B, with Thorpe, and
        with the Government (Requests 2, 6, 8, 10, 12, 14, 16, 18, 20, 28) ......29

IV.     REQUEST FOR ORAL ARGUMENT .........................................................30

V.      CONCLUSION.................................................................................................30

## TABLE OF AUTHORITIES

**Federal Cases**

*800 Front Street Corp. v. Travelers Prop. Cas. Co.*,
    2006 U.S. Dist. LEXIS 84160 (E.D.N.Y. Nov. 20, 2006)........................................... 14

*Abdell v. City of New York*,
    2006 U.S. Dist. LEXIS 66114 (S.D.N.Y. Sep. 14, 2006)............................................. 15

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. United States Department of Justice*,
    503 F. Supp. 2d 373 (D.D.C. 2007)................................................................................. 27

*Allied Irish Banks, p.l.c. v. Bank of America*,
    252 F.R.D. 163 (S.D.N.Y. 2008) ...................................................................... 13, 15, 16

*Andrades v. Holder*,
    286 F.R.D. 64 (D.D.C. 2012)..................................................................................... 9, 19

*ASARCO, LLC v. Americas Mining Corp.*,
    2007 U.S. Dist. LEXIS 84604 (D. Ida. Nov. 15, 2007)................................................. 16

*Basinger v. Glacier Carriers, Inc.*,
    107 F.R.D. 771 (M.D. Pa. 1985)............................................................................. 14, 17

*Blount Internat'l. Ltd. v. Schuylkill Energy Resources Inc.*,
    124 F.R.D. 523 (D. Mass. 1989)............................................................................. 10, 20

*Blue Angel Films, Ltd. v. First Look Studios, Inc.*,
    2011 U.S. Dist. LEXIS 23696 (S.D.N.Y. Mar. 9, 2011) ........................................ 10, 19

*Bottaro v. Hatton Assoc.*,
    96 F.R.D. 158 (E.D.N.Y. 1982) .................................................................................... 21

*Burlodge Ltd. v. Standex Internat'l. Corp.*,
    257 F.R.D. 12 (D.D.C. 2009)........................................................................... 11, 23, 24

*Carnes v. Crete Carrier Corp.*,
    244 F.R.D. 694 (N.D. Ga. 2007)....................................................................... 14, 15, 16

*Cohen v. City of New York*,
    255 F.R.D. 110 (S.D.N.Y. 2008) .................................................................................. 11

*Coleman v. District of Columbia*,
    275 F.R.D. 33 (D.D.C. 2011)..................................................................................... 9, 19

*Crosby v. City of New York*,
    269 F.R.D. 267 (S.D.N.Y. 2010) .................................................................................. 15

*Dart Indus. Co. v. Westwood Chem. Co.,*
  649 F.2d 646 (9th Cir. 1980) ........................................................................... 9

*Education Finance Council v. Oberg,*
  2010 U.S. Dist. LEXIS 102221 (D.D.C. Mar. 9, 2010).................................. 11, 23, 24

*Eli Lilly & Co. v. Valeant Pharmaceuticals Internat'l.,*
  2011 U.S. Dist. LEXIS 15246 (S.D. Ind. Feb. 15, 2011) ................................ 22, 28, 30

*Haus v. City of New York,*
  2006 U.S. Dist. LEXIS 85225 (S.D.N.Y. Nov. 17, 2006)........................................... 15

*Hickman v. Taylor,*
  329 U.S. 495 (1947)........................................................................................ passim

*In re Refco Sec. Litig.,*
  759 F. Supp. 2d 342 (S.D.N.Y. 2011) ................................................................. 10, 19

*In re Sealed Case,*
  856 F.2d 268 (D.C. Cir. 1988) ................................................................................. 13

*In re Student Finance Corp.,*
  2006 U.S. Dist. LEXIS 86603 (E.D. Pa. Nov. 29, 2006) ................................ 15, 16, 17

*In re Subpoena Issued to Dennis Friedman,*
  350 F.3d 65 (2d Cir. 2003) ........................................................................................ 9

*In re Subpoena Served on the Cal. Pub. Util. Comm'n.,*
  892 F.2d 778 (9th Cir. 1989) .................................................................................... 13

*In re: Teligent, Inc.,*
  640 F.3d 53 (2d Cir. 2011) ....................................................................................... 21

*Insituform Techs., Inc. v. Cat Contracting, Inc.,*
  914 F. Supp. 286 (N.D. Ill. 1996).................................................................. 10, 19, 20

*Jean v. City of New York,*
  2010 U.S. Dist. LEXIS 2282 (E.D.N.Y. Jan. 12, 2010) ............................................ 14

*Meijer, Inc. v. Warner Chilcott Holdings Co.,*
  245 F.R.D. 26 (D.D.C. 2007)...................................................................................... 9

*Miller v. Holzmann,*
  240 F.R.D. 20 (D.D.C. 2007)..................................................................................... 27

*National Union Fire Ins. Co. v. Murray Sheet Metal Co.,*
  967 F.2d 980 (4th Cir. 1992) .................................................................................... 13

*Nidec Corp. v. Victor Co.,*

NON-PARTY P&C'S MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

249 F.R.D. 575 (D.D.C. 2007)........................................................................ 12, 23, 24

*Nu Image, Inc. v. Does 1-23,322,*
799 F. Supp. 2d 34 (D.D.C. 2011) ............................................................................ 10

*Official Committee of Admin. Claimants v. Bricker,*
2011 U.S. Dist. LEXIS 49504 (N.D. Ohio May 9, 2011)..................................... 13, 22

*Oppenheimer Fund, Inc. v. Sanders,*
437 U.S. 340 (1978)............................................................................................ 10, 19

*Pac. Century Internat'l., Ltd. v. Does 1-37,*
282 F.R.D. 189 (N.D. Ill. 2012)........................................................................... 10, 19

*Roatan Cruise Terminal, S.A. v. HPA, Inc.,*
2011 U.S. Dist. 109223 (S.D. Fla. Sep. 26, 2011)..................................................... 13

*Rockwell Int'l. Corp. v. U.S. Dep't. of Justice,*
235 F.3d 598 (D.C. Cir. 2001)................................................................................... 28

*SEC v. Schroeder,*
2009 U.S. Dist. LEXIS 39378 (N.D. Cal. Apr. 27, 2009) .......................................... 16

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.,*
276 F.R.D. 376 (D.D.C. 2011)..................................................................................... 9

*Travelers Indem. Co. v. Metropolitan Life Ins. Co.,*
228 F.R.D. 111 (D. Conn. 2005) ............................................................................... 11

*United States ex rel. Fisher v. Network Software Assocs.,*
217 F.R.D. 240 (D.D.C. 2003).................................................................................... 11

*United States ex rel. Pogue v. Diabetes Treatment Centers,*
2004 U.S. Dist. LEXIS 18747 (D.D.C. May 17, 2004).............................................. 26

*United States v. Adlman,*
134 F.3d 1194 (2d Cir. 1998) .................................................................................... 12

*United States v. AT&T,*
642 F.2d 1285 (D.C. Cir. 1980).................................................................................. 28

*United States v. Deloitte LLP,*
610 F.3d 129 (D.C. Cir. 2010) ............................................................................ 12, 28

*Watts v. SEC,*
482 F.3d 501 (D.C. Cir. 2007).................................................................................... 11

*Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.,*
2002 U.S. Dist. LEXIS 789 (S.D.N.Y. Jan. 17, 2002) ........................................ 10, 19

*Wyoming v. U.S Dep't. of Agriculture,*
208 F.R.D. 449 (D.D.C. 2002)........................................................................... 11, 12, 23

*Zagklara v. Sprague Energy Corp.,*
2011 U.S. Dist. LEXIS 56782 (D. Me. May 26, 2011) ......................................... 14, 15

**State Cases**

*Hopp & Flesch, LLC v. Backstreet,*
123 P.3d 1176 (Colo. 2005) ...................................................................................... 18

**Federal Statutes**

31 U.S.C. § 3729.............................................................................................................. 1

31 U.S.C. § 3730(b)(5) .............................................................................................. 3, 27

31 U.S.C. §§ 3730(b) ...................................................................................................... 24

**Federal Rules**

Fed. R. Civ. Proc. 26(b)(1) ............................................................................................... 8

Fed. R. Civ. Proc. 26(b)(2)(C) .......................................................................... 10, 11, 24

Fed. R. Civ. Proc. 26(b)(3) ................................................................................ 12, 13, 26, 29

Fed. R. Civ. Proc. 26(c) .................................................................................... 11, 22

Fed. R. Civ. Proc. 45(c)(3)............................................................................................ 10

Fed. R. Civ. Proc. 45(c)(3)(A)(iii) ................................................................................ 16

## MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT non-party Phillips & Cohen LLP hereby moves for an order quashing the subpoena served upon it by plaintiffs Gregory Thorpe and Blair Hamrick, or in the alternative for a protective order precluding the discovery sought, on the grounds that:  (1) the subpoena seeks documents that are neither relevant to the claims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence; (2) the subpoena seeks to impose an undue burden on non-party Phillips & Cohen LLP; and (3) the subpoena seeks material protected from discovery by the work product doctrine.  This motion is made pursuant to Federal Rules of Civil Procedure 26 and 45, and is based upon the following Memorandum of Points and Authorities, the declarations of Stephen Hasegawa and Erika Kelton filed concurrently herewith, the files and pleadings in this action, and all other matters of which this Court may take judicial notice.

Dated:  April 24, 2013

Peter W. Chatfield, Esq.
D.C. Bar No. 418576
PHILLIPS & COHEN LLP
2000 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel:  (202) 833-4567
Fax:  (202) 833-1815
Email:  peter@phillipsandcohen.com

Stephen Hasegawa, Esq.
(Application for admission *pro hac vice* pending)
PHILLIPS & COHEN LLP
100 The Embarcadero, Suite 300
San Francisco, CA 94105
Tel:  (415) 836-9000
Fax:  (415) 836-9001
Email:  ssh@pcsf.com

Attorneys for non-party subpoena recipient
PHILLIPS & COHEN LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

Non-party Phillips & Cohen LLP ("P&C")—a law firm that has never represented plaintiffs Gregory Thorpe or Blair Hamrick, but that represented <u>different</u> clients in the lawsuit from which this malpractice action arises—moves to quash the subpoena (the "Subpoena") served by Thorpe and Hamrick, or, in the alternative, for a protective order preventing unwarranted intrusion into P&C's attorney work product and confidential records.

## I.   INTRODUCTION

P&C moves to quash, or for protection from, a burdensome subpoena that Thorpe and Hamrick have propounded to P&C not for the purpose of litigating the claims at issue in their pending lawsuit, but rather for the purpose of gathering information for use against <u>P&C</u>, who is not presently a defendant in any action.

This malpractice lawsuit has its origins in a series of whistleblower lawsuits (the "GSK lawsuits") filed against GlaxoSmithKline LLC ("GSK") under the False Claims Act (the "FCA") and similar state laws. The FCA and analogous state statutes permit persons with knowledge of fraud (sometimes called "relators") to sue on behalf of government victims of that fraud; if the government obtains a judgment or settlement as a result of those "*qui tam*" suits, the *qui tam* plaintiffs may share in the government's recovery. *See, e.g.*, 31 U.S.C. § 3729 *et seq.* The whistleblowers' reward in a *qui tam* suit is commonly known as the "relators' share."

Thorpe and Hamrick hired Keith Cross and Cross & Bennett (collectively, "C&B") to represent them in a whistleblower suit against GSK concerning the off-label marketing of certain drugs. P&C filed a separate suit against GSK on behalf of two different whistleblowers alleging overlapping—but not identical—claims. The government conducted a joint investigation of the allegations in both suits. The two sets of plaintiffs agreed that Thorpe and Hamrick would receive 50% of the aggregate relators' share from both suits, and P&C's clients would receive the remaining 50% of

{00048257; 1}                                               1

that aggregate relators' share (this agreement is referred to herein as the "Relators' Share Agreement"). In 2012, the government settled the lawsuits against GSK. Thorpe and Hamrick have received or will receive over $74 million for their participation in those suits (before payment of their attorneys' fees).

Thorpe and Hamrick, however, view their $74 million recovery as inadequate. As soon as it became clear that they would be the beneficiaries of a substantial recovery, Thorpe and Hamrick began attempting to reduce the contingent fee they agreed to pay C&B for representing them, while simultaneously scheming to repudiate the Relators' Share Agreement and to claim a greater share of any settlement. They now contend that C&B's representation of them in the GSK lawsuits was so substandard that Thorpe and Hamrick should be excused from their obligation to pay any legal fees to C&B, and that C&B instead should pay them another $75 million in damages.

Although Thorpe and Hamrick only assert claims against C&B, their Subpoena indicates that they are looking for a basis to sue P&C. The Subpoena seeks little non-privileged information relating to C&B's conduct (beyond documents that Thorpe and Hamrick could and should obtain from C&B itself). Instead, Thorpe and Hamrick demand, from P&C, broad categories of documents relating almost exclusively to P&C, including records relating to P&C's representation of its own clients and its evaluation of potential cases. Thus, although Thorpe and Hamrick's pending lawsuit concerns only the competence of the services that C&B rendered to them, the Subpoena is a naked attempt to gather information for use in evaluating, and perhaps litigating, a claim against P&C. Thorpe and Hamrick's counsel admitted as much in meet-and-confer discussions. That is an abuse of the subpoena power.

Because Thorpe and Hamrick seek documents that fall far outside the scope of permissible discovery, because the Subpoena seeks to impose unwarranted burdens far outweighing the purported relevance of the documents they seek, and because the Subpoena seeks (almost exclusively) documents exempt from discovery under the work-

product doctrine, the Court should quash the Subpoena or, in the alternative, should issue a protective order precluding the discovery sought.

## II.   SUMMARY OF FACTS AND PROCEDURAL HISTORY

### A.   The GlaxoSmithKline Lawsuits

This case involves a dispute between Plaintiffs and their attorneys, C&B, over C&B's alleged malpractice and C&B's right to attorneys' fees for representing Thorpe and Hamrick in a *qui tam*, or "whistleblower" suit against GlaxoSmithKline LLC under the FCA and similar state statutes.

Thorpe and Hamrick, represented by C&B, filed one such suit. Ex. 1, ¶ 81; Ex. 5.[1]  Thomas Gerahty and Matthew Burke (neither of whom is a party in this litigation), represented by P&C, filed another. Ex. 1 at 96; Ex. 2 at p. 23, ¶ 31. The suits (collectively, the "GSK lawsuits") were coordinated for the purpose of the government's investigation of the whistleblowers' allegations, and later were formally consolidated. *See, e.g.*, Ex. 2, ¶¶ 35, 43, 76; Ex. 3 at p. 8, ¶ 43, p. 13, ¶ 76.

The FCA provides that "when a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). As Thorpe and Hamrick explain, "[t]he first to file rule only protects the claims that the relator actually asserts. Where a subsequently filed complaint pleads facts and claims distinct from those pled in the first filed complaint, the relator who filed the second complaint will be considered the first-to-file with respect to those facts and claims." Ex. 1, ¶ 25. Thorpe and Hamrick were the first to file a complaint against GSK containing certain claims; according to Thorpe and Hamrick's own complaint, Gerahty and Burke were the first to file complaints against GSK asserting other claims. Ex. 1, ¶¶ 81, 91, 93, 105-06, 108, 129.

---

[1] Citations herein to exhibits refer to exhibits to the Declaration of Stephen Hasegawa, filed concurrently herewith.

In addition, the complaints brought by P&C's clients—two senior GSK insiders with knowledge of company-wide activity—contained far more detail than Thorpe and Hamrick's complaint, and therefore bore less risk of being dismissed under Federal Rule of Civil Procedure 9(b).  Ex. 1, ¶ 105; Ex. 2 at p. 23, ¶ 31; Ex. 5; Ex. 6.  Thus, both sets of plaintiffs faced risks that substantial portions of any recovery would go to the other set of plaintiffs.  In light of those risks, in early 2004, Thorpe, Hamrick, Burke, and Gerahty agreed to pool their resources (including the resources of their respective attorneys, P&C and C&B) and to share any whistleblower reward resulting from their cases.  Ex. 1, ¶¶ 112; Ex. 2 at p. 23-24, ¶¶ 31, 33; Ex. 3, ¶¶ 31, 33.  The plaintiffs in the GSK lawsuits agreed that Thorpe and Hamrick would receive 50% of the total relators' share in the GSK lawsuits; Gerahty and Burke would receive the other 50%.  Ex. 1, ¶¶ 111-112; Ex. 2 at p. 8, ¶ 43, p. 23, ¶ 33; Ex. 3, ¶ 33.  As Thorpe and Hamrick acknowledge, in reliance upon that agreement, P&C worked cooperatively with Thorpe and Hamrick's counsel to maximize the recovery by the government (to the benefit of all plaintiffs).  Ex. 1 at ¶ 163 (stating that P&C did "the great majority of the work" on the GSK lawsuits).

In 2012, GSK and the government finalized a settlement of the GSK lawsuits for civil damages of $1.017 billion (as part of a $3 billion settlement that included criminal penalties).  Ex. 2 at p. 34, ¶¶ 78-79; Ex. 3 at p. 13, ¶ 78-79.  The settlement made Thorpe and Hamrick very rich men.  Pursuant to their express, informed agreement to split the relators' share in the GSK lawsuits 50-50 with P&C's clients, Thorpe and Hamrick received, or are to receive, over $74 million from the settlement of the GSK lawsuits (prior to payment of attorneys' fees).  Ex. 2 at p. 35, ¶ 83; Ex. 3, ¶ 83.

Nonetheless, Thorpe and Hamrick feel undercompensated.  In September 2009, as soon as it became clear that a substantial recovery was highly probable—due in large part to years of P&C's work pursuant to all plaintiffs' agreement to pool their resources under the Relators' Share Agreement, *see* Ex. 1, ¶ 163 —Thorpe and Hamrick began seeking ways to increase their share of that recovery.  Thorpe schemed to repudiate the Relators'

Share Agreement and to reduce Gerahty and Burke's share from 50% to "25-30%" of the total relators' share. Ex. 2 at p. 30, ¶ 59; Ex. 3, ¶ 59.

Thorpe and Hamrick also proposed to reduce C&B's agreed-upon contingency fee from 40% to 24% of their recovery and to associate new co-counsel with an 8% contingency fee, thereby reducing their overall contingency fee obligation from 40% to 32%. In October 2009, when C&B rejected that proposal, Thorpe and Hamrick fired C&B. Ex. 2 at 31, ¶ 66; Ex. 3 at 12, ¶ 66. The next day, Thorpe wrote to Cross, threatening that "[m]y legal options are endless, and could be highly detrimental to your future in the legal profession .... [Y]ou have more money than you need right now ...." Ex. 2 at 31-32, ¶ 67; Ex. 3 at 12, ¶ 67. A week later, Thorpe again threatened that C&B's conduct might "trigger a malpractice suit and we would attempt to deny you anything in the matter, up to and including any attorney fees and costs." Ex. 2 at 32, ¶ 68; Ex. 3 at 12, ¶ 68.

C&B did not yield to Thorpe's threats. Thorpe and Hamrick sued C&B for malpractice, contending, as Thorpe had warned, that Thorpe and Hamrick need not pay C&B its agreed-upon contingent fee for C&B's work on the GSK lawsuits and that C&B additionally is liable for $75 million in damages to Thorpe and Hamrick. Ex. 1, ¶¶ 1, 194, 204. C&B counterclaimed for payment of the 40% contingency fee to which Thorpe and Hamrick had agreed. Ex. 2 at 36.

### B. Phillips & Cohen's Tangential Relationship to this Lawsuit and Thorpe and Hamrick's Subpoena

Thorpe and Hamrick's malpractice claims and C&B's counterclaim for fees do not depend in any way upon information in P&C's possession. P&C is not a party in the lawsuit. Neither Thorpe and Hamrick nor C&B have sought any relief from P&C or alleged any facts upon which any such relief could be sought. *See* Exs. 1, 2. P&C has never represented Thorpe or Hamrick in any lawsuit. P&C possesses no documents that can shed any light on whether C&B adequately represented Thorpe and Hamrick.

Thorpe and Hamrick, however, are keenly interested in obtaining information about <u>P&C</u>. That interest apparently derives from Thorpe's inquiry, a decade ago, about retaining P&C (an inquiry that was immediately rejected). In April 2002, Thorpe printed a questionnaire from P&C's web site, filled out the questionnaire with summary information concerning the alleged off-label marketing of four GSK drugs, and, on or after April 17, 2002, sent his responses to P&C. Hasegawa Decl., ¶ 8. On April 25, 2002, Bonny Harbinger, P&C's intake coordinator, reviewed Thorpe's submission and, on the same day, sent Thorpe a letter stating that P&C "decided against accepting your case." *Id.*, ¶ 9. Thorpe apparently also provided some documents, but P&C returned them to Thorpe with the rejection letter and did not make or retain any copies of those documents. *Id.* Harbinger, who left P&C in January 2004, was the only P&C attorney involved in the evaluation of Thorpe's submission. *Id.* Although it is unclear what, if anything, Thorpe's submission to P&C has to do with C&B's alleged malpractice or C&B's right to fees, P&C has produced to Thorpe and Hamrick all communications between P&C and Thorpe. *Id.*, ¶ 10.

But Thorpe and Hamrick are not satisfied with that production. Thorpe and Hamrick have served P&C with the Subpoena, which seeks 28 broad categories of documents covering a twelve-year period. *See* Subpoena (attached hereto). They demand all of P&C's communications with C&B regarding the GSK lawsuits or any other lawsuit in which P&C and C&B had a business relationship (Requests 1, 7, 9, 13, 15, 27); all of P&C's confidential work-product communications with the government during the GSK lawsuits (Requests 5, 11, 17, 19); all of P&C's confidential work-product notes or memoranda concerning communications with C&B, the government, or Thorpe (Requests 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 28); P&C's work-product and settlement documents pertaining to P&C's request for fees in the GSK lawsuits (Request 21); and other P&C records relating to P&C's work in the GSK lawsuits, to P&C's evaluation of potential cases, and to P&C's rejection of Thorpe's inquiry about retaining P&C

(Requests 22-26). Given the breadth of the Subpoena—which is not limited to the GSK lawsuits, and which instead seeks information about P&C's litigation of other cases in which Cross is co-counsel and P&C's evaluation of potential cases from 2001 to the present—the Subpoena would require review of countless records generated in multiple lawsuits (including a decade-long, billion-dollar litigation and pending sealed litigation) or in the evaluation of thousands of potential cases over a dozen years, all maintained in the electronic or hard-copy files of every current and former P&C lawyer and numerous P&C employees. Hasegawa Decl., ¶¶ 13, 15-17. Virtually all of those documents would be paradigmatic attorney work product—documents prepared by lawyers on behalf of parties to a lawsuit or potential lawsuit for the purpose of evaluating or prosecuting that lawsuit.

Thorpe and Hamrick's counsel admit that they would like to use this information to evaluate potential claims against P&C. When asked, in meet and confer discussions, whether they were seeking information to evaluate potential claims against P&C, Thorpe and Hamrick's counsel informed P&C that they would soon be issuing a letter to P&C seeking information relating to perceived (but unfounded) ethical concerns; they sent that letter on April 18, 2013. Hasegawa Decl., ¶ 19-20. Thorpe and Hamrick's counsel stated that many of the discovery issues raised by the Subpoena were dependent upon P&C's response to that letter. *Id.*, ¶ 19. Indeed, that letter was based upon the documents that P&C has already produced in response to their Subpoena. *Id.*, ¶ 19-20. Thorpe and Hamrick's counsel have also used those documents to seek information from a former P&C attorney. *Id.*, ¶ 20. In other words, Thorpe and Hamrick have already used the Subpoena to gather information for use against P&C, and simply seek additional information for that same purpose.

The documents Thorpe and Hamrick seek have little or nothing to do with their malpractice claims or C&B's fee counterclaim, the only matters at issue in the pending lawsuit. Instead, it is apparent that Thorpe and Hamrick have used their suit against C&B

as a pretext to search for information pertaining to P&C alone—a fishing expedition in which Thorpe and Hamrick hope to find a basis to sue P&C.

## III.   ARGUMENT

P&C moves the Court for an order quashing the Subpoena, or, in the alternative, for a protective order precluding the discovery Thorpe and Hamrick seek, for three reasons. *First*, although the parties' claims and cross-claims depend exclusively upon C&B's conduct (*i.e.*, whether C&B committed malpractice in representing Thorpe and Hamrick), the Subpoena seeks almost exclusively information about P&C's actions, communications, policies, and representation of its clients—matters that are utterly irrelevant to the claims and defenses in the pending litigation. *Second*, other than documents that are equally available from defendant C&B, the vast majority (and perhaps all) of the documents that Thorpe and Hamrick seek constitute protected attorney work product—documents created by lawyers for the purpose of representing their clients in active litigation. *Third*, in light of the lack of probative value of the documents sought and the predominance of protected attorney work product among those documents, it would be unduly burdensome to require P&C to search for and describe on a privilege or redaction log every responsive communication.

### A.   Summary of Applicable Law

#### 1.   Discovery Is Limited to Information Relevant to the Claims and Defenses Presented in the Case at Bar

Discovery is presumptively limited to information "that is relevant to any party's claim or defense." Fed. R. Civ. Proc. 26(b)(1). Upon a showing of "good cause" by the party seeking discovery, a court also "may order discovery of any matter relevant to the subject matter involved in the action." *Id.* The "subject matter involved in [this] action" is C&B's alleged malpractice in representing Thorpe and Hamrick in the GSK lawsuits, not P&C's conduct in representing its own clients.

While the scope of discovery is broad, "[t]he discovery rules ... are not an open-ended invitation to subject a party to irrelevant, unduly burdensome, or otherwise improper discovery requests." *Andrades v. Holder*, 286 F.R.D. 64, 66 (D.D.C. 2012). Thus, "[a] showing of relevance can be viewed as a showing of need; for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of a matter not 'relevant to the subject matter involved in the pending action.'" *Coleman v. District of Columbia*, 275 F.R.D. 33, 36 (D.D.C. 2011), *quoting Meijer, Inc. v. Warner Chilcott Holdings Co.*, 245 F.R.D. 26, 29-30 (D.D.C. 2007).

While courts sometimes construe the scope of discovery expansively, three principles operate to limit the scope of discovery in this case.

First, "relevance" is more strictly construed where, as here, the discovery is directed to a third party. "While discovery is a valuable right and should not be unnecessarily restricted ... the 'necessary' restriction may be broader when a nonparty is the target of discovery." *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (citation omitted); *see also Andrades*, 286 F.R.D. at 66 (granting motion to quash third-party subpoenas because requests were "not narrowly tailored" to obtain information relevant to parties' claims and defenses).

Second, courts proceed with heightened caution when the target of a party's discovery is litigation counsel: "'Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-81 (D.D.C. 2011), *quoting In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003).

Third, because "relevance" is defined by the claims and defenses at issue in the case in which discovery is sought, courts refuse to permit parties to use broad discovery in pending cases as a pretext to gather information for other pending or potential cases

NON-PARTY P&C'S MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

against third parties. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353

(1978) ("when the purpose of a discovery request is to gather information for use in

proceedings other than the pending suit, discovery properly is denied"); *Nu Image, Inc. v.*

*Does 1-23,322*, 799 F. Supp. 2d 34, 41 (D.D.C. 2011) (quoting *Oppenheimer, supra*, and

denying request for third-party discovery propounded "solely to obtain information that

will be used in another lawsuit in a different venue").[2]

    As set forth in Sections III.B-III.E below, each of these concerns warrants an

order quashing or limiting the Subpoena.

        2.    A Court Must Limit Discovery if Its Burden Outweighs Its Benefit

    A court "must limit the frequency or extent of discovery ... if it determines that

... the burden or expense of the proposed discovery outweighs its likely benefit ...." Fed.

R. Civ. Proc. 26(b)(2)(C). This duty is heightened when discovery is sought from a non-

party: a court "must quash or modify [a] subpoena that ... subjects a person to undue

burden." Fed. R. Civ. Proc. 45(c)(3). "The Rule 45 'undue burden' standard requires

district courts supervising discovery to be generally sensitive to the costs imposed on

third parties. ... '[C]oncern for the unwanted burden thrust upon non-parties is a factor

---

[2] *See also, e.g., Pac. Century Internat'l., Ltd. v. Does 1-37*, 282 F.R.D. 189, 195-96 (N.D. Ill. 2012) (denying discovery intended to identify additional entities to sue, rather than to support claims against existing defendants in case in which discovery was sought); *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, 2011 U.S. Dist. LEXIS 23696, *4 (S.D.N.Y. Mar. 9, 2011) (quashing third-party subpoena seeking information relating to claims plaintiff intended to plead against the subpoena recipient, because those claims were not yet at issue and the information sought was not relevant to any then-pending claims or defenses); *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) (overruling magistrate judge and quashing subpoena seeking information to bolster claims in a related arbitration, not in the pending suit); *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*, 2002 U.S. Dist. LEXIS 789, *10-11 (S.D.N.Y. Jan. 17, 2002) (denying discovery where "it appears that Plaintiff was merely seeking to learn about other U.S. companies it could sue"); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 914 F. Supp. 286, 287 (N.D. Ill. 1996) (quashing third-party subpoena where "the information that plaintiffs seek goes more to the issue of [the third party's] potential liability for patent infringement" than to the issues in the pending case); *Blount Internat'l. Ltd. v. Schuylkill Energy Resources Inc.*, 124 F.R.D. 523, 527 (D. Mass. 1989) (denying discovery "directed at bringing claims against [the third-party subpoena recipient," because discovery is "limited to the claims and defenses which have been asserted to date").

entitled to special weight in evaluating the balance of competing needs.'" *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007). A court also may, upon a showing of "good cause," issue an order protecting a party or non-party from "oppression, or undue burden or expense." Fed. R. Civ. Proc. 26(c).

Courts consider a number of factors in determining whether a subpoena imposes an undue burden, including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Cohen v. City of New York*, 255 F.R.D. 110, 117-18 (S.D.N.Y. 2008), *quoting Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005); *see also United States ex rel. Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 246 (D.D.C. 2003) ("To determine the level of burden a document places on the responding party, the court 'should balance the need for discovery against the burden imposed on the person ordered to produce the documents'"), *quoting Wyoming v. U.S Dep't. of Agriculture*, 208 F.R.D. 449, 452 (D.D.C. 2002).

A court also must limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient [or] less burdensome ...." Fed. R. Civ. Proc. 26(b)(2)(C)(i). Courts generally find that document requests in non-party subpoenas are *per se* "unduly burdensome" and unreasonably cumulative or duplicative if they seek documents that are equally available from parties to the litigation. *See, e.g., Education Finance Council v. Oberg*, 2010 U.S. Dist. LEXIS 102221, * 8 (D.D.C. Mar. 9, 2010) (subpoena "imposes an undue burden on EFC because it appears that many, if not all, of EFC's communications with the defendants are available from the defendants to the underlying litigation themselves"); *Burlodge Ltd. v. Standex Internat'l. Corp.*, 257 F.R.D. 12, 19 (D.D.C. 2009) (subpoena is "unduly burdensome because of the absence of any showing that the information sought is not available from other sources") *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577

(D.D.C. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant"); *Wyoming v. U.S. Dep't. of Agriculture*, 208 F.R.D. at 454 (communications sought from third party also "would be in the hands of the … defendants, and thus intrusion into the activities of the non-party witnesses is unwarranted and unnecessarily burdensome").

    As described in Section III.C below, many of the documents that Thorpe and Hamrick seek from P&C are communications with defendant C&B, and therefore are equally available from C&B.  Thorpe and Hamrick have no specific reason to believe that those communications are unavailable from C&B; instead, Thorpe and Hamrick's counsel stated that they simply wanted P&C to produce the communications to "test" C&B's production.  Hasegawa Decl., ¶ 18.  Moreover, the burden upon P&C of searching for and privilege-logging the remaining documents that Thorpe and Hamrick seek would be unwarranted in light of the lack of relevance and of the likelihood that all responsive documents (other than those equally available from C&B) constitute protected work product.

3.    The Work Product Doctrine Protects P&C's Internal Litigation
Communications from Production

    The Supreme Court established the work-product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947).  The doctrine is "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998), *quoting Hickman*, 329 U.S. at 510-11.

    The work product doctrine has been "partially codified" in Federal Rule of Civil Procedure 26(b)(3). *United States v. Deloitte LLP*, 610 F.3d 129, 124-35 (D.C. Cir. 2010).  That rule provides that documents "prepared in anticipation of litigation or for trial by or for another party or its representative" are exempt from discovery unless the party seeking those materials demonstrates, among other things, "substantial need" for

those materials. Fed. R. Civ. Proc. 26(b)(3)(A). Even with a showing of "substantial need," materials disclosing an attorney's "mental impressions, conclusions, opinions, or legal theories" concerning the litigation are absolutely protected from discovery. Fed. R. Civ. Proc. 26(b)(3)(B).

Some courts have held that Rule 26(b)(3) precludes discovery of work product prepared by or on behalf of non-parties to the litigation in which the documents are sought. *See, e.g., In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988) (holding that non-party subpoena recipient had established applicability of the work product doctrine, but remanding for consideration of requesting party's "substantial need"); *National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 985-86 (4th Cir. 1992) (holding that subpoenaed documents could constitute non-party's work product and remanding for further consideration); *Roatan Cruise Terminal, S.A. v. HPA, Inc.*, 2011 U.S. Dist. 109223, *1-2 (S.D. Fla. Sep. 26, 2011) (non-party subpoena recipient "established the applicability of the work product doctrine"); *Official Committee of Admin. Claimants v. Bricker*, 2011 U.S. Dist. LEXIS 49504, *14 (N.D. Ohio May 9, 2011) (where subpoena sought third parties' documents, "the work-product protection is applicable").

In some other cases, courts have held that Rule 26(b)(3) applies only to work product prepared "by or for [a] party" to the litigation in which the information is sought. *See, e.g., In re Subpoena Served on the Cal. Pub. Util. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989); *Allied Irish Banks, p.l.c. v. Bank of America*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008). Nonetheless, even courts that decline to extend the protections of Rule 26(b)(3) to non-parties generally protect non-party work product from discovery under one of four theories. To the extent that Thorpe and Hamrick seek P&C's attorney work product created in litigating other cases (including the GSK lawsuits)—*i.e.*, communications created by lawyers for the purpose of advancing or protecting their clients' interests in

active litigation—each of those theories provides a valid and independent basis on which to quash or limit the Subpoena.

First, many courts construe Rule 26(b)(3)'s "by or for [a] party" language to include materials created by or for entities that might later become parties, recognizing that to hold otherwise would risk the misuse of the subpoena power.  Absent such a rule:

> Whenever multiple individuals or entities might be liable for a plaintiff's injury, the plaintiff could sue only one and immediately subpoena a report prepared for another potentially-liable party.  After obtaining the report, the plaintiff could then amend his or her complaint to add that party as a defendant.  That possibility is not one that would be countenanced by any court interpreting the work product doctrine or Rule 26(b)(3).

*Zagklara v. Sprague Energy Corp.*, 2011 U.S. Dist. LEXIS 56782, *6-7 (D. Me. May 26, 2011).  Accordingly, courts have extended work product protection to non-parties against whom the party seeking discovery might later become adverse.  *See, e.g., id.* (holding that Rule 26(b)(3) would apply to the work product of a non-party "unless and until it is clearly shown that [the non-party] is not and cannot be made a party to this case").[3]  Here, by Thorpe's own admission, Thorpe and Hamrick have been seeking, since 2009, a basis on which to enrich themselves at the expense of P&C's clients. *See* Ex. 2 at 30, ¶ 59; Ex. 3 at 11, ¶ 59. As described above, the Subpoena focuses on P&C conduct that has nothing to do with Thorpe and Hamrick's malpractice claim against C&B.  Thorpe and Hamrick's counsel admit as much; indeed, they have <u>already</u> used documents P&C

---

[3] *See also, e.g., Jean v. City of New York*, 2010 U.S. Dist. LEXIS 2282, *6-7 (E.D.N.Y. Jan. 12, 2010) (extending work product protection to non-party district attorney because "there is at least the possibility of further litigation between the DA and the plaintiff" seeking documents); *800 Front Street Corp. v. Travelers Prop. Cas. Co.*, 2006 U.S. Dist. LEXIS 84160, *9-10 (E.D.N.Y. Nov. 20, 2006) (extending work product protection to materials prepared for non-party whose case was "expected" to be joined to case in which materials were sought); *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 699 (N.D. Ga. 2007) (extending work product protection to non-party who "may be a party to litigation at some point in the future," because it would be "unjust" to require the non-party to provide its work product to a potential adverse party); *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771 (M.D. Pa. 1985) (applying Rule 26(b)(3) to prevent disclosure of non-party work product "to a party who may subsequently join the non-party in the litigation").

produced in response to the Subpoena to threaten action again P&C. Hasegawa Decl., ¶ 19-20. Clearly, Thorpe and Hamrick seek P&C's documents in the hope of using them against P&C or its clients, precisely the gamesmanship that the court in *Zagklara* refused to countenance. *Zagklara*, 2011 U.S. Dist. LEXIS 56782 at *6-7.

Second, some courts recognize that "the work-product doctrine articulated in *Hickman* and its progeny ... is broader than the protection supplied by Rule 26(b)(3)." *Crosby v. City of New York*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010); *see also, e.g.*, *Carnes*, 244 F.R.D. at 699 ("Rule 45 [] and *Hickman* suggest that the scope of [work product] protection should extend to a non-party ...."); *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603, *31-32, 34 (E.D. Pa. Nov. 29, 2006) ("The rule is only a partial codification of the work product privilege ... and therefore leaves room for the privilege to be asserted outside its terms in appropriate cases"; "*Hickman* itself provides authority to protect work product outside the terms of Rule 26(b)(3)"); *Haus v. City of New York*, 2006 U.S. Dist. LEXIS 85225, *11 (S.D.N.Y. Nov. 17, 2006) ("the inapplicability of Rule 26(b)(3) does not preclude granting similar immunity under the common-law work-product doctrine"); *Abdell v. City of New York*, 2006 U.S. Dist. LEXIS 66114, *12-14 (S.D.N.Y. Sep. 14, 2006) ("the work product doctrine as articulated in *Hickman* ... is broader than Rule 26(b)(3)"). These courts hold that non-parties may invoke work product protection when doing so "vindicate[s] the purposes underlying the [*Hickman*] doctrine," *i.e.*, protection of attorneys' ability to formulate legal theories and prepare cases without intrusion from adversaries, preventing opponents from "free-loading" off of adversaries' work, and preventing interference with litigation. *Crosby*, 269 F.R.D. at 277. Because attorneys' investigation and analysis would be chilled if those attorneys believed their work product could be used by adversaries in related litigation, and because disclosure of P&C's work product would enable Thorpe and Hamrick's attorneys to "freeload" off of P&C's work, the "zone of privacy" created by *Hickman* should apply here. *See Allied Irish Banks*, 252 F.R.D. at 175.

Third, some courts have held that third-party work product is excluded from discovery because Rule 45 itself "specifically permits non-parties to seek protection from a subpoena that 'requires disclosure of privileged or other protected matter." *Allied Irish Banks*, 252 F.R.D. at 173 (emphasis added), *citing* Fed. R. Civ. Proc. 45(c)(3)(A)(iii); *see also ASARCO, LLC v. Americas Mining Corp.*, 2007 U.S. Dist. LEXIS 84604, *17 (D. Ida. Nov. 15, 2007) (language of Rule 45 "protects against discovery of third-party work product in appropriate cases"); *Carnes*, 244 F.R.D. at 699 ("Rule 45 [] and *Hickman* suggest that the scope of [work product] protection should extend to a non-party ...."); *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603 at *32-33 ("Rule 45 does not define what privileges and protections are to be enforced under its terms, but the language is broad enough to include protection against discovery of third-party work product in appropriate cases").

Fourth, "even many of those decisions which refuse to protect third party work product under Rule 26(b)(3) recognize that a protective order could issue under Rule 26(c) to prevent disclosure of the material." *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603 at *33-34 (holding that Rule 26(c) "is sufficiently sweeping to authorize a protective order preventing the undue burden of disclosing third-party work product in appropriate cases"); *see also, e.g.*, *SEC v. Schroeder*, 2009 U.S. Dist. LEXIS 39378, *15-16 n.3 (N.D. Cal. Apr. 27, 2009) (holding that court could issue protective order under Rule 26(c) to protect non-party work product); *Allied Irish Banks*, 252 F.R.D. at 173 (holding that inapplicability of Rule 26(b)(3) "does not preclude granting similar immunity under the ... 'good cause' balancing test that is incorporated in Federal Rule of Civil Procedure 26(c)") (citation omitted"); *ASARCO*, 2007 U.S. Cist. LEXIS 84604 at *17 ("A protective order may be issued under Rule 26(c) to prevent disclosure" of non-party work product). As these courts recognize, the disclosure of non-party work product is itself a cognizable "undue burden" that may warrant the entry of a protective order. *See Carnes*, 244 F.R.D. at 699 ("requiring UPS to provide its information to a potentially

adverse party or co-tortfeasor would be 'unduly burdensome' and therefore, unjust"); *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603 at *33-34 (recognizing the "undue burden of disclosing third-party work product"); *Basinger*, 107 F.R.D. at 772 ("if a party to litigation is partially protected by Rule 26(b)(3) from having to disclose certain information to an opposing party, it is unduly 'burdensome' and therefore, unjust, to require a non-party to deliver the same kind of information to a party who may subsequently join the non-party in the litigation"). Here, where the documents sought have no probative value, the burden of Thorpe and Hamrick's proposed interference with P&C's (and its clients') work product clearly warrants entry of a protective order.

**B.      P&C Should Not Be Required to Produce or Log Documents Relating Exclusively to P&C (Requests No. 4, 21-26)**

1.      Requests 4 and 21-26 Seek Only Irrelevant Information

Requests 4 and 21-26 seek information that has nothing to do with the dispute between C&B and Thorpe and Hamrick, and that therefore does not relate to the claims or defenses of any party in the litigation. Fed. R. Civ. Proc. 26(b)(1). Those requests seek:

- P&C's internal documents concerning communications with Thorpe and concerning P&C's evaluation of Thorpe's inquiry in 2002 (P&C has already produced all of its correspondence with Thorpe) (Requests 4, 22, 25, 26);

- Attorney work product and settlement communications regarding Gerahty and Burke's request for payment of P&C's statutory attorneys' fees in the GSK lawsuits (Request 21);

- Documents "reflecting or relating to" P&C's "policies and procedures regarding the evaluation of prospective clients" for the past twelve years (Request 23);

- All "[d]ocuments reflecting the identit[y]" of any P&C attorney or
  employee involved in P&C's representation of Gerahty and Burke in the
  nearly decade-long litigation of their case against GSK (Request 24).

Subpoena at Requests 4, 21-23, 25-26.

Because Thorpe and Hamrick's defense against C&B's counterclaim for fees is premised upon their contention that C&B "forfeited" any right to fees through "malpractice and ethical violations" (*see* Ex. 3 at 15, ¶¶ 1-2, 4), the central issue for both parties' claims is whether C&B committed malpractice.[4]  To establish such a claim in Colorado—the jurisdiction in which C&B is located and in which C&B filed Thorpe and Hamrick's suit against GSK—Thorpe and Hamrick must prove that "(1) the attorney owed a duty of care to the client; (2) the attorney breached that duty; and (3) by breaching his duty, the attorney proximately caused damage to the client." *Hopp & Flesch, LLC v. Backstreet*, 123 P.3d 1176, 1183 (Colo. 2005).

Apart from (and perhaps including) documents that Thorpe and Hamrick can and should obtain from defendant C&B itself, nothing responsive to Requests 4 and 21-26 has any relevance whatsoever to the central issue of C&B's alleged malpractice.  C&B's duty of care arises from its agreement to serve as Thorpe and Hamrick's counsel, not from anything P&C did in response to Thorpe's inquiry into representation, P&C's evaluation of potential clients and potential cases, P&C's representation of Gerahty and Burke, or GSK's payment of P&C's fees under the FCA's fee-shifting provisions.  Similarly, C&B's breach of its duty of care (or the absence of any such breach), and any resulting damages, must be determined by reference to C&B's conduct, not by reviewing materials concerning P&C's representation of its own clients and rejection of Thorpe's inquiry into representation.  Thus, Requests 4 and 21-26 seek only information that is not relevant to

---

[4] Neither party asserts any affirmative defenses implicating P&C's conduct. *See* Ex. 2 at p. 14-15 (listing C&B's affirmative defenses to Thorpe and Hamrick's claims); Ex. 3 at p. 15-16 (listing Thorpe and Hamrick's affirmative defenses to C&B's counterclaims)

the claim or defense of any party to this case or to the subject matter of the lawsuit and are plainly not calculated to lead to the discovery of relevant information. They therefore fall outside the scope of permissible discovery. *See* Fed. R. Civ. Proc. 26(b)(1); *see also Andrades*, 286 F.R.D. at 66 (quashing subpoena that was not "narrowly tailored" to obtain relevant information); *Coleman*, 275 F.R.D. at 36 ("one is presumed to have no need of a matter not 'relevant to the subject matter involved in the pending action'") (citation omitted).

It is particularly important to quash or modify the Subpoena as to Requests 4 and 21-26 because those requests represent a transparent, and inappropriate, attempt to gather information for use in evaluating or prosecuting a lawsuit that Thorpe and Gerahty have not filed. "[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Oppenheimer Fund*, 437 U.S. at 353.[5] Courts therefore routinely quash or refuse to enforce subpoenas and discovery requests intended to identify additional parties to sue or to gather information for yet-unfiled lawsuits. *See, e.g., Pac. Century*, 282 F.R.D. at 195-96 (denying discovery intended to identify additional entities to join as defendants); *Blue Angel Films*, 2011 U.S. Dist. LEXIS 23696 at *4 (quashing subpoena seeking information relating to claims plaintiff intended to plead against the subpoena recipient); *Well-Made Toy Mfg.*, 2002 U.S. Dist. LEXIS 789 at *10-11 (denying discovery where "it appears that Plaintiff was merely seeking to learn about other U.S. companies it could

---

[5] Courts need not accept a party's proffered explanation for its need for discovery if a different, illegitimate purpose is apparent. *See, e.g., Pac. Century*, 282 F.R.D. at 195-96 (rejecting proffered pretext for discovery and finding that request was actually intended to identify additional entities to sue); *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) (rejecting "a series of tenuous arguments" for the relevance of documents sought, and finding that "the true purpose" of the discovery was to bolster claims in a related arbitration) *Insituform Techs.*, 914 F. Supp. at 287 (granting motion to quash where "[t]he content and broadness of plaintiffs' discovery request raise the suspicion" that the purpose of the requests was to gather information for "a lawsuit that plaintiffs may be planning to file" against the non-party subpoena recipient).

sue"); *Insituform Techs.*, 914 F. Supp. at 287 (quashing third-party subpoena seeking information for potential patent infringement claim); *Blount Internat'l.*, 124 F.R.D. at 527 (denying discovery "directed at bringing claims against [the third-party subpoena recipient").

The scope of the requests in Thorpe and Hamrick's Subpoena and their focus on P&C's conduct rather than on the malpractice claims at issue in this case demonstrate that Thorpe and Hamrick seek to gather information to use against <u>P&C</u>, not against <u>C&B</u>. Thorpe has been searching since at least 2009 for a way to circumvent the Relators' Share Agreement and to obtain a greater share of the recovery from the GSK lawsuits at the expense of P&C and its clients. Ex. 2 at 30, ¶ 59; Ex. 3 at 11, ¶ 59. Indeed, Thorpe and Hamrick's counsel have already used information produced pursuant to the Subpoena to assert (unwarranted) ethical concerns regarding P&C's conduct wholly unrelated to the pending lawsuit, and have stated that many of the disputes concerning the Subpoena are contingent upon P&C's response to those purported concerns. Hasegawa Decl., ¶ 19-20. But P&C's conduct is not at issue in this case. Because the only claims at issue in this case involve C&B's conduct, Thorpe and Hamrick are not entitled to the irrelevant information that they seek.

> 2.    Requests 4 and 21-26 Impose Undue Burdens and Seek Protected Work Product

While Request 4 and 21-26 seek only irrelevant documents, the burden of producing or privilege-logging them would be substantial.

For example, Request 23 seeks "all documents reflecting or relating to any policies or procedures regarding the evaluation of prospective clients in effect at P&C from January 1, 2001 to the present." Subpoena at 8. While most submissions to P&C (including Thorpe's) go no further than P&C's intake coordinator, each P&C attorney participates in the evaluation of <u>some</u> prospective cases. Hasegawa Decl., ¶¶ 11-12. Thus, it is difficult to imagine how P&C could comply with this request without simply

reviewing, without restriction, millions of emails and other documents generated by every lawyer in the firm for the last dozen years in search of emails that touch upon such "policies and procedures." *Id.*, ¶ 13. Even Thorpe and Hamrick's less sprawling requests, like those seeking information about Thorpe's 2002 submission to P&C, seek information dating back ten years. Subpoena at 5 (Requests 3-4). In light of the fact that those documents are not relevant to any issues in Thorpe and Hamrick's case against C&B, there is no reason to impose upon P&C the burden of searching for those documents.

That burden is even more oppressive in light of the fact that most or all of the documents sought are privileged or protected from discovery. Request 21 seeks all documents relating to P&C's claim against GSK for payment of P&C's attorneys' fees and costs pursuant to the FCA. Subpoena at 7. Those documents consist of (a) confidential settlement communications between P&C and attorneys for GSK[6]; and (b) basic attorney work product—documents prepared by P&C for the purpose of litigating either Gerahty and Burke's underlying claims against GSK or P&C's statutory fee claims. Kelton Decl., ¶ 7. Confidential internal documents relating to P&C's rejection of Thorpe's inquiry into representation by P&C (Requests 4, 22, 25, 26) and to P&C's evaluation of thousands of other potential cases (Request 23) also, by definition, constitute basic attorney work product—documents reflecting P&C's candid evaluation of the merits of potential litigation. And documents "reflecting the identities of all P&C attorneys and employees involved in the representation of Thomas Gerahty and Matthew

---

[6] P&C's communications with GSK in negotiating the settlement of that issue, while not subject to a "privilege," are nonetheless not discoverable absent a heightened showing of relevance by Thorpe and Gerahty. *See, e.g., Bottaro v. Hatton Assoc.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (requiring "some particularized showing of a likelihood that admissible evidence will be generated" by disclosure of a settlement agreement); *c.f. In re: Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011) (protecting confidentiality of mediation communications). Thorpe and Gerahty obviously cannot make any such showing, since P&C's legal fees have nothing whatsoever to do with C&B's alleged malpractice.

Burke" obviously also will include virtually unlimited quantities of confidential internal communications created by P&C on behalf of Gerahty and Burke in the course of litigating their claims against GSK for almost a decade.

The substantial burden of preparing a privilege and work-product log is unwarranted in light of the manifest lack of relevance of the documents sought, the fact that P&C is not a party in the case, and the unlikelihood of finding any relevant, responsive, non-protected documents. *See, e.g.*, *Eli Lilly & Co. v. Valeant Pharmaceuticals Internat'l.*, 2011 U.S. Dist. LEXIS 15246, *5 (S.D. Ind. Feb. 15, 2011) ("In reality ... requiring Lilly to prepare a privilege log for documents that are marginally relevant to this garden-variety contract dispute would be unduly burdensome"); *Bricker*, 2011 U.S. Dist. LEXIS 49504 at *15-16 (holding that it would be unduly burdensome for third parties to make individualized responses to subpoenas, "including privilege logs"); Fed. R. Civ. Proc. 26(c) (court should issue protective order to protect a person from "undue burden or expense"). Accordingly, the Court should not require non-party P&C to prepare a privilege log describing the irrelevant information sought by these requests.

**C.    P&C Should Not Be Required to Search for or Produce Documents Equally Available to the Parties (Requests 1, 7, 9, 13, 15, 27)**

Request 1 seeks "all communications" between P&C and C&B from January 1, 2000 to the present. Subpoena at 5. Although the request expressly includes all communications concerning the GSK lawsuits, it also states that it is "not limited to" those communications—it seeks all communications between P&C and C&B concerning any subject whatsoever. *Id.* Requests 7, 9, 13, 15, and 27 seek subsets of the information sought in Request 1—P&C's communications with C&B regarding "any business or commercial relationship or potential business or commercial relationship" between the two firms, "first-to-file matters," "the quality of [C&B's] services," C&B's fee dispute with Thorpe and Hamrick, and Thorpe's 2002 inquiry to P&C.

NON-PARTY P&C'S MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

Those requests seek P&C's correspondence with C&B, which, by definition, is equally available from defendants Cross and C&B. Indeed, other than the documents sought by Request 7, all such documents likely are already in Thorpe and Hamrick's possession. *See* Ex. 2 at p. 33, ¶ 73 (C&B's counterclaim, stating that C&B forwarded its entire "litigation file" for the GSK lawsuits, including "documents, exhibits, and emails," to Thorpe and Hamrick's new counsel). A third-party subpoena imposes an undue burden when it seeks documents that are equally available from a party. *See, e.g., Education Finance Council*, 2010 U.S. Dist. LEXIS 102221 at * 8 (subpoena "imposes an undue burden on EFC because it appears that many, if not all, of EFC's communications with the defendants are available from the defendants to the underlying litigation themselves"); *Burlodge*, 257 F.R.D. at 19 (subpoena is "unduly burdensome because of the absence of any showing that the information sought is not available from other sources") *Nidec*, 249 F.R.D. at 577 ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant"); *Wyoming*, 208 F.R.D. at 454 (communications sought from third party also "would be in the hands of the ... defendants, and thus intrusion into the activities of the non-party witnesses is unwarranted and unnecessarily burdensome"). This is a sufficient basis on which to quash the Subpoena as to these requests.

When asked, in meet-and-confer discussions, whether there was any specific reason to believe that P&C was in possession of communications with C&B that could not be obtained from C&B itself, counsel for Thorpe and Hamrick described only a general fear that some documents might be missing. Hasegawa Decl., ¶ 18. Counsel asserted that they sought P&C's communications to "test" C&B's production, by requesting the same set of communications from both the party (C&B) and the non-party (P&C), "and asking, 'do they match?'" *Id.*. The admission that Thorpe and Hamrick seek only to "match" P&C's copy of its communications with C&B's copy of the same communications establishes that these requests are "unreasonably cumulative or

duplicative," in violation of Rule 26(b)(2)(C)(i), and that these requests impose precisely the type of unnecessarily duplicative burden that courts in this District reject. *See Education Finance Council, Burlodge,* and *Nidec, supra.*

These requests also are improper for the independent reason that they seek substantial information that is not relevant to any claim or defense. It is unclear what relevant information Thorpe and Hamrick hope to find in the countless communications exchanged over a half-decade between counsel for co-parties in a billion-dollar litigation. Those documents will include exchanges of legal theories, strategic discussions, and correspondence regarding the ordinary day-to-day administration of litigation, all or most of which has no bearing on the malpractice and fee claims at issue in this litigation. The mere theoretical possibility that Thorpe and Hamrick might find something useful, without any showing that they are reasonably likely to do so (or that they cannot obtain such useful documents from defendants themselves) does not justify the burden Thorpe and Hamrick seek to impose upon P&C of searching for and producing these documents.

The Court also should quash the Subpoena as to Request 7—which seeks all communications between P&C and C&B in other cases in which those firms serve as co-counsel (that is, in cases in which Thorpe and Hamrick are not parties and have no interest)—for three additional reasons. First, this request is intended to discover attorney work product created in the litigation of cases in which C&B served as local counsel or co-counsel to P&C—*i.e.*, documents created by attorneys for the purpose of litigating cases on behalf of P&C and C&B's joint clients. P&C and C&B's work product in those cases should be protected for the reasons set forth in Section III.A.3 above. Second, Request 7 seeks information that, pursuant to statute and court order, cannot be disclosed. The FCA requires that *qui tam* cases be filed under seal for at least 60 days and for a longer period upon a showing of good cause; cases typically remain under seal for several years while the government investigates them. 31 U.S.C. §§ 3730(b)(2)-(3). C&B is co-counsel to P&C in one or more cases that remain under seal, and P&C cannot, without

violating the seal in those cases, produce to Thorpe and Hamrick its communications

concerning those cases. Hasegawa Decl., ¶ 14. Third, the request is not narrowly

tailored to obtain relevant information. Even if the terms of any co-counsel relationship

between P&C and C&B were relevant (and if they were, C&B should get that

information from C&B), Thorpe and Hamrick's demand for "all communications"

exchanged between P&C and C&B in those cases is grossly overbroad.

### D.   P&C Should Not Be Required to Produce or Log Work-Product Communications with the Government (Requests 5, 11, 17, 19)

Request 5 seeks "[a]ll communications between [P&C] and the Government in

connection with the [GSK lawsuits]." Subpoena at 5. Requests 11, 17, and 19 seek

subsets of that information—P&C's communications with the government regarding

"first-to-file matters," "the quality of [C&B's] services and/or any allegations of

malpractice by [C&B]," and "the fee dispute" between C&B and Thorpe and Bennett.

As an initial matter, P&C's communications with the government are not relevant

to the pending litigation. The vast majority of the documents sought by these requests are

typical communications between attorneys for co-parties (the government and Gerahty

and Burke) who share an interest in the litigation—factual and legal analyses, strategic

communications, and more mundane correspondence regarding the day-to-day

administration of litigation—none of which has anything to do with whether C&B

committed malpractice. Kelton Decl., ¶ 9. Even the Subpoena's less indiscriminate

requests for communications between P&C and the government concerning "first-to-file

matters," "the quality of [C&B]'s services," and "the fee dispute" seek purely irrelevant

information. P&C's and the government's opinions, analysis, or casual comments

concerning those matters (if such documents even exist) are not admissible to prove or

disprove the malpractice and fee claims at issue in this litigation, and cannot lead to the

discovery of any admissible evidence. Indeed, it appears that Thorpe and Hamrick seek

these documents not to further their claims and defenses against C&B, but rather to

gather information for potential use against P&C. For the reasons set forth in Sections III.A.1 and III.B above, this is not an appropriate purpose for discovery. The Subpoena should be quashed as to these requests for this reason alone.

The Subpoena also should be quashed for the independent reason that these requests by definition seek only protected attorney work product. Gerahty and Burke were *qui tam* plaintiffs (*i.e.*, parties) in their suit against GSK; P&C was their attorney; the government was the real party in interest; and Department of Justice and District of Massachusetts attorneys represented the government in the suit. Thus, communications between P&C and the government are, by definition, "documents" prepared "by or for [a] party or its representative" in the underlying GSK lawsuits. *See* Fed. R. Civ. Proc. 26(b)(3)(A); *see also Hickman*, 329 U.S. at 509-10 (protecting documents "prepared or formed by ... counsel"). Because Thorpe and Hamrick seek only communications made "in connection with" the GSK lawsuits or pertaining to particular issues in that lawsuit (*i.e.*, first-to-file issues, C&B's competence in that lawsuit, or the fee dispute arising between C&B and Thorpe and Hamrick during that lawsuit), those communications necessarily were "in anticipation" of litigation. Indeed, they were made for the sole purpose of existing litigation. Kelton Decl., ¶¶ 3-4, 9. The communications sought thus are archetypal attorney work product.

Neither P&C nor the government waived work product protection by communicating with each other. A communication between parties with a common interest is protected if the communication "(1) is prompted by actual or anticipated litigation; (2) for the purpose of furthering a common interest; and (3) in a manner that is consistent with maintaining confidentiality against adverse parties." *United States ex rel. Pogue v. Diabetes Treatment Centers*, 2004 U.S. Dist. LEXIS 18747, *14 (D.D.C. May 17, 2004). *Qui tam* plaintiffs and the government share a common interest in FCA litigation, permitting them to communicate with each other in confidence. *See, e.g., Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. United States Department of Justice*, 503 F.

Supp. 2d 373, 380 (D.D.C. 2007) (in FCA cases, "[w]hen information is shared between the relator and the United States, the attorney-client and work product privileges are not waived because any communications are conducted in furtherance of joint prosecution and on the basis of common interests") (citations omitted); *Miller v. Holzmann*, 240 F.R.D. 20, 21-23 (D.D.C. 2007) (in FCA cases, government and relator have "a common interest in the prosecution of common defendants" precluding waiver of litigation communications between the two, despite possibility of dispute over relator's share of recovery at end of case). Thus, communications between P&C and its clients' co-party, the government, are protected by the work product doctrine, as set forth in Section III.A.3 above, and the Court should quash the Subpoena or issue a protective order as to these requests.

In meet and confer discussions, counsel for Thorpe and Hamrick contended that the government was an adverse party (not a party aligned with Gerahty and Burke) as to first-to-file issues, and that P&C's communications with the government on that issue therefore are not protected by the work product doctrine. This argument misunderstands both the facts and the law. The first-to-file rule concerns which relator is entitled to pursue (and recover for) an allegation when that allegation has been asserted in suits by multiple relators. 31 U.S.C. § 3730(b)(5). It does not affect the government's obligation to pay one of the relators under the False Claims Act. *Id.* Thus, on first-to-file issues, P&C was adverse to Thorpe and Hamrick, but not adverse to the government; at worst, the government was neutral.[7] And disclosure to a party who was not adverse to P&C's clients does not waive the work product protection. That protection, unlike the attorney-client privilege, is waived only by a disclosure "inconsistent with the maintenance of

---

[7] Even if the government somehow were adverse to P&C's clients on first-to-file issues, that still would not make these communications discoverable. If the communications were made for the purpose of resolving any supposed "adversity" concerning first-to-file issues, they would be settlement communications, which are not discoverable absent a heightened showing of relevance. *See* Footnote 6 above.

secrecy from the disclosing party's adversary," *i.e.*, Thorpe and Hamrick. *Deloitte*, 610 F.3d at 140 (work product protection is waived only by disclosure "inconsistent with the maintenance of secrecy from the disclosing party's adversary") (quoting and citing *Rockwell Int'l. Corp. v. U.S. Dep't. of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001) and *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). Because disclosure of P&C's analysis of first-to-file issues to the government was not "inconsistent with the maintenance of secrecy" from Thorpe and Hamrick (as evidenced by the fact that Thorpe and Hamrick have not been able to obtain copies of the confidential communications at issue) the work product doctrine precludes disclosure of such documents.

Given the clearly protected nature of the documents sought and those documents' lack of any relevance to the pending litigation, the burden of preparing a document-by-document privilege log would far outweigh the value of doing so. This is not an instance where a party propounds a general discovery request that only incidentally seeks protected information. Instead, the requests are drafted specifically to seek core attorney work product. If required to comply with the Subpoena, P&C would be forced to search among all communications in a nearly decade-long billion dollar litigation for thousands of documents, then create individual log entries for each responsive document, even though every responsive document is protected for exactly the same reasons (*i.e.*, that each is, by definition, a document prepared by or on behalf of parties to the GSK case for the purpose of litigating that case). Kelton Decl., ¶¶ 3-4, 9. Such a burden is clearly unwarranted. *See, e.g.*, *Eli Lilly*, 2011 U.S. Dist. LEXIS 15246 at *5 ("requiring Lilly to prepare a privilege log for documents that are marginally relevant ... would be unduly burdensome"); Fed. R. Civ. Proc. 26(c) (court should issue protective order to protect a parson from "undue burden or expense").

**E.      P&C Should Not Be Required to Produce or Log Work Product "Reflecting or Relating to" Communications with C&B, with Thorpe, and with the Government (Requests 2, 6, 8, 10, 12, 14, 16, 18, 20, 28)**

As described in Sections III.C and III.D above, Requests 1, 5, 7, 9, 11, 13, 15, 17, 19, and 27 seek all communications between P&C and C&B or between P&C and the government. Requests 2, 6, 8, 10, 12, 14, 16, 18, 20, and 28 are somewhat broader: they seek "all documents reflecting or relating to" communications between P&C and C&B or between P&C and the government. Thus, except to the extent that they overlap with the requests described in Sections III.C and III.D above, these requests seek only P&C's internal notes and memoranda concerning its communications with C&B and the government.

P&C's internal notes and memoranda concerning its communications with the government are irrelevant for the same reason that the underlying communications themselves are irrelevant, as set forth in Section III.D above. And to the extent that Thorpe and Hamrick seek documents identifying or summarizing communications between P&C and C&B, they must obtain that information from defendant C&B, not from a non-party, as set forth in Section III.C. Thus, for the reasons set forth in Sections III.C and III.D, the Court should quash the Subpoena as to these categories.

The Court also should excuse compliance with these requests for an independent reason: they seek, by definition, information at the heart of the attorney work product doctrine—attorneys' confidential notes and memoranda regarding communications made to further or protect the interests of P&C's clients. The requests therefore seek "documents" prepared "by or for [a] party or its representative" in the underlying GSK lawsuits, for the sole purpose of litigating that case and protecting P&C's clients' interests in that case (*i.e.*, "in anticipation of litigation"). *See* Fed. R. Civ. Proc. 26(b)(3)(A); *see also Hickman*, 329 U.S. at 509-10 (protecting documents "prepared or formed by ... counsel"); Kelton Decl., ¶ 10. Indeed, some of the requested documents— P&C's notes and memoranda concerning first-to-file issues and concerning the

negotiation of the January 2004 relators' share agreement—were created for the specific purpose of protecting Gerahty and Burke's interests against Thorpe and Hamrick. Kelton Decl., ¶¶ 3-4, 10-11. As described in Section III.A.3 above, this core work product should be protected from disclosure under Rule 26(b), Rule 26(c), or Rule 45.

Moreover, because the requests seek only P&C's protected work product, and because the requests seek only information that either is completely irrelevant or can be obtained from a party to the litigation, the burden of preparing a document-by-document privilege log would far outweigh the value of doing so. P&C again would be forced to search among all of its internal emails, notes, and memoranda in a nearly decade-long billion-dollar lawsuit for thousands of documents, then create individual entries for each responsive document, even though every responsive document is protected for exactly the same reasons (*i.e.*, that each is, by definition, a document prepared by or on behalf of parties to the GSK case for the purpose of litigating that case). Kelton Decl., ¶¶ 10-11. Such a burden is clearly unwarranted. *See, e.g.*, *Eli Lilly*, 2011 U.S. Dist. LEXIS 15246 at *5 ("requiring Lilly to prepare a privilege log for documents that are marginally relevant … would be unduly burdensome"); Fed. R. Civ. Proc. 26(c) (court should issue protective order to protect a parson from "undue burden or expense").

## IV.   REQUEST FOR ORAL ARGUMENT

P&C requests oral argument on this motion.

## V.   CONCLUSION

For the foregoing reasons, non-party Phillips & Cohen LLP requests that the Court quash the Subpoena, or in the alternative, issue a protective order precluding the discovery sought.

Dated:  April 24, 2013

_Peter W. Chatfield_

Peter W. Chatfield, Esq.
(D.C. Bar No. 418576)
PHILLIPS & COHEN LLP

2000 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel:  (202) 833-4567
Fax:  (202) 833-1815
Email:  peter@phillipsandcohen.com

Stephen Hasegawa, Esq.
(Application for admission *pro hac vice* pending)
PHILLIPS & COHEN LLP
100 The Embarcadero, Suite 300
San Francisco, CA 94105
Tel:  (415) 836-9000
Fax:  (415) 836-9001
Email:  ssh@pcsf.com

Attorneys for non-party subpoena recipient
PHILLIPS & COHEN LLP

NON-PARTY P&C'S MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER