UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE THIRD-PARTY SUBPOENA TO PRODUCE DOCUMENTS | Case No. 1:13-mc-00405-JEB-DAR |
| GREGORY THORPE and BLAIR HAMRICK,<br><br>                    Plaintiffs,<br><br>                    v.<br><br>KEITH F. CROSS, JOSEPH F. BENNETT, and CROSS & BENNETT L.L.C.,<br><br>                    Defendants. | Related to:<br>No. 1:12-cv-11632-RWZ<br>Pending in the DISTRICT OF MASSACHUSETTS |

**<u>NON-PARTY PHILLIPS & COHEN LLP'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER RE: SUBPOENA (DOC. NO. 1)</u>**

## TABLE OF CONTENTS

I.     THORPE AND HAMRICK'S OPPOSITION WAS UNTIMELY, AND THE MOTION MAY BE DEEMED CONCEDED ................................................................... 1

II.     THE MOTION IS MOOT AS TO MODIFIED REQUESTS 6-9 ...................................... 2

III.     MODIFIED REQUEST 1 IS UNDULY BURDENSOME AND SEEKS DOCUMENTS EQUALLY AVAILABLE FROM PARTIES .......................................... 3

IV.     MODIFIED REQUEST 10 SEEKS DOCUMENTS EQUALLY AVAILABLE FROM PARTIES AND PROTECTED FROM DISCLOSURE BY STATUTE AND COURT ORDER ................................................................................................... 6

V.     MODIFIED REQUESTS 2-5 AND 11 SEEK PROTECTED WORK PRODUCT ........... 7

      A.     The Court Should Protect P&C's Third-Party Work Product ................................ 8

           1.     The Court Should Protect P&C's Work Product Under Rule 26(c) ............ 9

           2.     The Court Should Protect P&C's Work Product Under Rule 45 .............. 10

           3.     The Court Should Prevent P&C's Work Product from Disclosure to Potential Litigation Adversaries ........................................................ 10

           4.     The Court Should Protect P&C's Work Product Under the *Hickman* Rule, Which Is Broader than Rule 26(b)(3) .............................. 12

      B.     P&C Did Not Waive Work Product Protection by Disclosure to the Government ....................................................................................................... 13

      C.     Thorpe and Hamrick Cannot Obtain P&C's Work Product Under the "Substantial Need" Exception ............................................................................ 15

      D.     P&C's Work Product Is Not Relevant ................................................................ 16

      E.     The Burden of Searching For and Privilege-Logging Irrelevant Work Product Documents Is Unwarranted ................................................................. 17

VI.     THE COURT SHOULD NOT COMPEL PRODUCTION OF DOCUMENTS NOT SOUGHT BY THE SUBPOENA (MODIFIED REQUESTS 5 AND 11) .............. 17

VII.     P&C MET AND CONFERRED IN GOOD FAITH ....................................................... 18

VIII.     CONCLUSION ............................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Allied Irish Banks, p.l.c. v. Bank of America*,
    252 F.R.D. 163 (S.D.N.Y. 2008) ................................................................................ 10

*Andrades v. Holder*,
    286 F.R.D. 64 (D.D.C. 2012).................................................................................... 16

*ASARCO, LLC v. Americas Mining Corp.*,
    2007 U.S. Dist. LEXIS 84604 (D. Ida. Nov. 15, 2007)............................................. 10

*Basinger v. Glacier Carriers, Inc.*,
    107 F.R.D. 771 (M.D. Pa. 1985)................................................................................ 9

*Burlodge Ltd. v. Standex Internat'l. Corp.*,
    257 F.R.D. 12 (D.D.C. 2009)................................................................................ 3, 5

*Carnes v. Crete Carrier Corp.*,
    244 F.R.D. 694 (N.D. Ga. 2007)................................................................. 9, 10, 11, 12

*Coffeeville Res. Ref. & Mktg. LLC v. Liberty Surplus Ins. Corp.*,
    2008 U.S. Dist. LEXIS 91224 (E.D. Ark. Nov. 6, 2008) ............................................. 4

*Crosby v. City of New York*,
    269 F.R.D. 267 (S.D.N.Y. 2010) ............................................................................... 12

*Day v. D.C. Dept. of Consumer & Reg. Affairs*,
    191 F. Supp. 2d 154 (D.D.C. 2002) ........................................................................... 10

*Dorsey v. Executive Office for U.S. Attorneys*,
    2013 U.S. Dist. LEXIS 28739 (D.D.C. Mar. 1, 2013)............................................. 9, 10

*Education Finance Council v. Oberg*,
    2010 U.S. Dist. LEXIS 102221 (D.D.C. Mar. 9, 2010)............................................. 3, 6

*Hickman v. Taylor*,
    329 U.S. 495 (1947).................................................................................... 8, 12, 13

*In re Sealed Case*,
    856 F.2d 268 (D.C. Cir. 1988) .................................................................................. 8

*In re Student Finance Corp.*,
    2006 U.S. Dist. LEXIS 86603 (E.D. Pa. Nov. 29, 2006) ........................................ 9, 10

*In re: Sealed Case*,
    29 F.3d 715 (D.C. Cir. 1994) .................................................................................. 11

*In re: Sealed Case*,
676 F.2d 793 (D.C. Cir. 1982) ................................................................. 11

*Jean v. City of New York*,
2010 U.S. Dist. LEXIS 2282 (E.D.N.Y. Jan. 12, 2010) ......................... 11, 12

*Miller v. City of Ithaca*,
2012 U.S. Dist. LEXIS 63433 (N.D.N.Y. May 4, 2012) ............................ 2

*Murphy v. Auto Advantage, Inc.*,
2012 U.S. Dist. LEXIS 2396 (W.D.N.C. Jan. 6, 2012) ............................. 2

*Nidec Corp. v. Victor Co.*,
249 F.R.D. 575 (D.D.C. 2007) ..................................................................... 3

*Rockwell Int'l. Corp. v. U.S. Dep't. of Justice*,
235 F.3d 598 (D.C. Cir. 2001) ................................................................... 14

*Software Rights Archive, LLC v. Google, Inc.*,
2009 U.S. Dist. LEXIS 43835 (D. Del. May 21, 2009) ............................. 4

*Solis v. Food Employers Labor Relations Ass'n.*,
644 F.3d 221 (5th Cir. 2011) ..................................................................... 11

*United States v. Adlman*,
134 F.3d 1194 (2d Cir. 1998) ..................................................................... 13

*United States v. AT&T*,
642 F.2d 1285 (D.C. Cir. 1980) ................................................................. 14

*United States v. Deloitte LLP*,
610 F.3d 129 (D.C. Cir. 2010) ................................................................... 14

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) ................................................................................... 15

*Viacom Internat'l. Inc.v. YouTube, Inc.*,
2008 U.S. Dist. LEXIS 79777 (N.D. Cal. Aug. 18, 2008) ......................... 5

*Violette v. P.A. Days, Inc.*,
427 F.3d 1015 (6th Cir. 2005) ..................................................................... 2

*Wyoming v. U.S. Dept. of Agriculture*,
208 F.R.D. 449 (D.D.C. 2002) ..................................................................... 3

*Zagklara v. Sprague Energy Corp.*,
2011 U.S. Dist. LEXIS 56782 (D. Me. May 26, 2011) ............................. 12

**Federal Rules**

D.D.C. Local Civ. R. 7(b) ............................................................................. 2

Fed. R. Civ. Proc. 26(b)(1) ......................................................................... 16

Fed. R. Civ. Proc. 26(b)(2)(C)(i) .............................................................. 3, 4

Fed. R. Civ. Proc. 26(b)(3) ............................................................ 8, 9, 10, 13

Fed. R. Civ. Proc. 26(b)(3)(A)(ii) .......................................................... 15, 16

Fed. R. Civ. Proc. 26(b)(3)(B) ................................................................... 15

Fed. R. Civ. Proc. 26(c) ......................................................................... 9, 10

Fed. R. Civ. Proc. 45 ................................................................................. 10

Fed. R. Civ. Proc. 6(a) ................................................................................ 2

Fed. R. Evid. 401 ...................................................................................... 16

**Other Authorities**

Committee Notes on Fed. R. Civ. Proc. 6—2009 Amendment .......................... 2

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

In their Opposition to P&C's Motion to Quash or, in the Alternative, for Protective Order (the "Opposition"), Thorpe and Hamrick narrow the 28 categories in their Subpoena to 11 categories of information (the "Modified Requests"), thus conceding the Motion as to all other documents. Opposition at 15-16. As set forth below, the parties have reached an agreement resolving their dispute as to four of those categories (Modified Requests 6-9). Thus, the Motion is moot as to all but Modified Requests 1-5 and 10-11.

The remaining Modified Requests continue to seek documents that are not discoverable, because Thorpe and Hamrick could obtain the documents (and presumably already have obtained the documents) from defendant C&B, because the documents are comprised of P&C's work product (as Thorpe and Hamrick admit), and because P&C is prohibited by statute and court order from producing some of the documents sought.

## I.   THORPE AND HAMRICK'S OPPOSITION WAS UNTIMELY, AND THE MOTION MAY BE DEEMED CONCEDED

Thorpe and Hamrick's Opposition is untimely. It originally was due on May 13, 2013. On May 10, 2013, Thorpe and Hamrick moved to extend that deadline until May 27, 2013. Dkt. No. 7 at 1 (Thorpe and Hamrick's proposed order, stating that "Plaintiffs must file their Response [to P&C's Motion] … on or before May 27, 2013." The Court granted the extension, ordering: "Response due by 5/27/2013. Reply due by 6/6/2013." Minute Order dated May 20, 2013.

Despite the Court's explicit statement that the Opposition was due on May 27, 2013, Thorpe and Hamrick did not file the Opposition until 10:35 p.m. on May 28, 2013. Thorpe and Hamrick did not seek an extension of the May 27 deadline from the Court and did not explain in their brief why they were not capable of filing the Opposition on the date they requested and the Court ordered.

That May 27—the deadline that Thorpe and Hamrick themselves requested—was a court holiday does not mean that their Opposition was due on the next business day. Rule 6(a) extends the time for filing papers when the deadline is computed by counting days forward from an event and the deadline otherwise would fall on a holiday.  That rule, however, "appl[ies] only when a time period must be computed.  [It] do[es] not apply when a fixed time to act is set."  Committee Notes on Rule 6—2009 Amendment (stating that the rule "carr[ies] forward the approach taken in *Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1016 (6th Cir. 2005) (holding that Civil Rule 6(a) 'does not apply to situations where the court has established a specific calendar day as a deadline'"); *see also Miller v. City of Ithaca*, 2012 U.S. Dist. LEXIS 63433, *4 (N.D.N.Y. May 4, 2012) ("Because … the Court set a specific, stated deadline, Rule 6(a) is inapplicable and papers were required to be filed on or before [that date] regardless of whether [it] was a weekend or a holiday"); *Murphy v. Auto Advantage, Inc.*, 2012 U.S. Dist. LEXIS 2396, *2 (W.D.N.C. Jan. 6, 2012) ("Rule 6(a) has no application when the Court sets a specific date for an act to occur.  The advisory committee's notes … make[] this clear." Accordingly, Thorpe and Hamrick should have used the Court's electronic filing system to file their Opposition as ordered on May 27, 2013.

Because the Opposition was "not filed within the prescribed time, the Court may treat the motion as conceded."  L.Cv.R. 7(b).  The Court accordingly may grant P&C's Motion without reaching the merits of Thorpe and Hamrick's Opposition.

## II.     THE MOTION IS MOOT AS TO MODIFIED REQUESTS 6-9

Although P&C continues to believe that the documents that Thorpe and Hamrick seek in Modified Requests 6-9 are irrelevant, sought for an improper purpose, and subject to the work product protection, in order to narrow this dispute, P&C has agreed to provide: (1) certain declarations and other information establishing that, in representing Gerahty and Burke prior to the parties' agreement in the GSK lawsuits to pool their resources and share in any recovery, P&C did not review or use any information Thorpe

provided in his 2002 submission to P&C; and (2) a copy of the information P&C

provided to GSK in support of P&C's request for reasonable attorneys' fees in the GSK

lawsuits.  In exchange, Thorpe and Hamrick have agreed: (1) to withdraw their Modified

Requests 6-9; (2) that P&C's provision of information pursuant to this agreement will not

constitute a subject-matter waiver of any privileges or protections applicable to

documents or information not produced; and (3) to treat the information P&C provided as

confidential, subject to the terms of a stipulated protective order to be filed in the District

of Massachusetts.  Hasegawa Decl. in Supp. of Reply (June 21, 2013), ¶ 2-3.

Accordingly, the Motion is moot as to these requests.

### III.    MODIFIED REQUEST 1 IS UNDULY BURDENSOME AND SEEKS DOCUMENTS EQUALLY AVAILABLE FROM PARTIES

As P&C demonstrated in its Memorandum of Points and Authorities (the

"Opening Brief") at 11-12, in this District, a subpoena to a third party seeking documents

that should be available from a party is "unreasonably cumulative or duplicative" and is

"unduly burdensome" unless the subpoenaing party makes a "showing that the

information sought is not available from other sources."  *Burlodge Ltd. v. Standex

Internat'l. Corp.*, 257 F.R.D. 12, 19 (D.D.C. 2009); *see also* Fed. R. Civ. Proc.

26(b)(2)(C)(i) (court must limit discovery if it is "unreasonably cumulative or

duplicative"); *Education Finance Council v. Oberg*, 2010 U.S. Dist. LEXIS 102221, *8

(D.D.C. Mar. 9, 2010) (subpoena "imposes an undue burden on EFC because it appears

that many, if not all, of EFC's communications with the defendants are available from the

defendants to the underlying litigation themselves"); *Nidec Corp. v. Victor Co.*, 249

F.R.D. 575, 577 (D.D.C. 2007) ("There is simply no reason to burden nonparties when

the documents sought are in possession of the party defendant"); *Wyoming v. U.S. Dept.

of Agriculture*, 208 F.R.D. 449, 454 (D.D.C. 2002) (communications sought from third

party "would be in the hands of the … defendants, and thus intrusion into the activities of

the non-party witnesses is unwarranted and unnecessarily burdensome").

Thorpe and Hamrick cite no contrary law from this circuit.[1]  Instead, they claim that they are entitled to impose upon P&C the burden of searching for and producing P&C's correspondence with C&B because they believe that "all communications between P&C and C&B are not available from C&B."  Opp. at 32.

That statement is utterly without evidentiary support.  The Seidman Declaration upon which Thorpe and Hamrick rely contains a lengthy recitation of a dispute over whether C&B retained all of its internal emails (*i.e.*, email communications between the two partners in the firm)—a dispute that has nothing whatsoever to do with C&B's retention of external communications with P&C.  Dkt. 11-1, Ex. C, ¶ 7-26.  The Seidman Declaration also refers to an incident in which C&B was in possession of a document that it failed to include in its transfer of client files to Thorpe and Hamrick's new counsel, which had nothing to do with discovery and which demonstrates that Thorpe and Hamrick are capable of obtaining relevant documents from C&B itself.  *Id.*, ¶ 27.  And the Seidman Declaration identifies only a single external communication, out of all of the documents generated in eight years of representation, that C&B apparently failed to retain (but that was in Thorpe and Hamrick's possession)—an email from C&B to Thorpe and Hamrick themselves.  *Id.*, ¶ 28.  The fact that C&B may have lost one email

---

[1] The only cases that Thorpe and Hamrick cite that purport to be contrary to the rule in this District are *Coffeeville Res. Ref. & Mktg. LLC v. Liberty Surplus Ins. Corp.*, 2008 U.S. Dist. LEXIS 91224, *5 (E.D. Ark. Nov. 6, 2008), and *Software Rights Archive, LLC v. Google, Inc.*, 2009 U.S. Dist. LEXIS 43835 (D. Del. May 21, 2009).  To the extent that those cases disagree with the cases from this District cited above, the Court should follow the law of this District and the Federal Rules, which require a court to prevent "unreasonably cumulative or duplicative" discovery.  Fed. R. Civ. Proc. 26(b)(2)(C)(i)).  In any event, neither of the foreign cases Thorpe and Hamrick cited support their argument.  In *Coffeeville*, the court declined to require the subpoenaing party to first seek documents from the opposing party (rather than from a third party) because that issue already was before the court in which the action was pending, and thus would soon be resolved by that court.  *Coffeeville*, 2008 U.S. Dist. LEXIS 91224 at *6-7.  And in *Software Rights Archive*, the Court compelled production largely because the subpoena recipients "actually ha[d] an interest in the outcome of the case"—they owned and controlled a party to the underlying litigation, and thus were practically, if not formally, parties to the litigation.  Here, P&C has no interest in the underlying suit, and Thorpe and Hamrick do not contend otherwise.

to its own clients in eight years and may have had a policy of not maintaining emails between partners of the firm does not suggest that C&B lost any of its correspondence with P&C. And Thorpe and Hamrick do not even attempt to assert that the production they have already received from C&B appears incomplete. Contrary to Thorpe and Hamrick's assertion, there is no evidence whatsoever that C&B has failed to provide them with all communications between C&B and P&C.

Nor have Thorpe and Hamrick established, despite their reliance upon *Viacom Internat'l. Inc.v. YouTube, Inc.*, 2008 U.S. Dist. LEXIS 79777 (N.D. Cal. Aug. 18, 2008), that C&B's record-keeping practices were so shoddy as to warrant the burden of redundant discovery. In *Viacom*, the court held that third-party production may be warranted where "there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions," 2008 U.S. Dist. LEXIS 79777 at *10, a standard similar to this District's requirement that the subpoenaing party make a "showing that the information sought is not available from other sources." *Burlodge*, 257 F.R.D. at 19. In *Viacom*, however, the subpoenaing party met that burden by establishing "poor initial record keeping" by the party. *Viacom*, 2008 U.S. Dist. LEXIS 79777 at *7. It did so by pointing out that the party was "housed initially in a garage, then in various short-term offices," and that discovery had already demonstrated that the party had lost some of its communications with the non-party subpoena recipients. *Id.* at *7 n.2, *11. But Thorpe and Hamrick, unlike the subpoenaing party in *Viacom*, have shown neither poor recordkeeping nor examples of gaps in C&B's retention of the documents at issue. Apart from the dispute over whether C&B maintained copies of its <u>internal</u> emails (a dispute that does not relate to correspondence with P&C), Thorpe and Hamrick make no arguments whatsoever about C&B's recordkeeping practices, and C&B's record retention certainly cannot be compared to files haphazardly "housed … in a garage." To the contrary, the fact that Thorpe and Hamrick have been able to identify only one lost email (not a communication

between P&C and C&B) created in an eight-year representation is a testament to the sufficiency of C&B's recordkeeping.  *See*, *e.g.*, *Education Finance Council*, 2010 U.S. Dist. LEXIS 102221, *8-9 (quashing third-party subpoena where "many, if not all" documents could be obtained from parties).

Finally, Thorpe and Hamrick resort to an *ad hominem* attack on P&C, claiming that this Court should ignore the unnecessary burden upon P&C and the Federal Rules' prohibition on "unreasonably cumulative or duplicative" discovery because P&C supposedly "was the direct beneficiary of a cover-up and received tens of millions of dollars as a result."  Opp. at 32.  They cite no facts to support this argument, and cannot. P&C was not the "beneficiary of a cover-up"; instead it ably represented two highly-qualified whistleblowers in the successful prosecution of a *qui tam* case.  Thorpe and Hamrick themselves admit that that success was due to P&C's hard work.  Opp. at 3 (claiming that "P&C was doing all the work" in the GSK Lawsuit).  Thus, P&C benefited from its expertise, its labor, and the strength of its clients' case, not from any purported "cover-up."  And Thorpe and Hamrick cite no authority whatsoever for the proposition that the Court should punish P&C for that success by imposing unnecessary and duplicative burdens upon it.

Thorpe and Hamrick have made no showing that they cannot obtain—and have not already obtained—from C&B copies of all of C&B's correspondence with P&C, or that there is any reason to doubt C&B's production of those documents.  Accordingly, the Court should grant P&C's Motion as to Modified Request 1.

## IV.    MODIFIED REQUEST 10 SEEKS DOCUMENTS EQUALLY AVAILABLE FROM PARTIES AND PROTECTED FROM DISCLOSURE BY STATUTE AND COURT ORDER

The Court should grant the Motion as to Modified Request 10 for the same reasons.  Thorpe and Hamrick have made no showing—indeed, they have made no attempt to show—that C&B's records of "agreements or proposed agreements relating to any business or commercial relationship or potential relationship between P&C and C&B

other than the GSK Lawsuits" are incomplete.  Opp. at 16.  If these documents are discoverable, Thorpe and Hamrick should get them from defendant C&B.

There is an additional, compelling reason to grant the Motion as to this Modified Request.  In the Opening Brief, P&C pointed out that C&B is co-counsel to P&C on one or more cases that are under seal pursuant to statute and court order, and that P&C cannot produce the requested information without violating the seal in those cases and subjecting itself and its clients to potential consequences.  Opening Br. at 24-25.  Thorpe and Hamrick have not responded to this argument, and have not offered any reason why this Court should compel P&C to violate the seal orders of other courts.

## V.     MODIFIED REQUESTS 2-5 AND 11 SEEK PROTECTED WORK PRODUCT

Thorpe and Hamrick openly seek work product at the heart of the *Hickman v. Taylor* rule:  confidential litigation materials that P&C prepared for the specific purpose of litigating claims on behalf of P&C's clients, Thomas Gerahty and Matthew Burke— litigants who Thorpe and Hamrick describe as "directly adverse" to them in the prior case Opp. at 3.  This is not a case in which a subpoena only incidentally touches upon work-product documents, or where there are disputes about whether the information was prepared for a non-litigation purpose.  Thorpe and Hamrick seek only confidential litigation documents prepared for "directly adverse" parties, which they admit that they will use "to decide whether or how to pursue" claims against P&C.  Opp. at 3, 22.  Yet they do not even acknowledge the extraordinary nature of the discovery they seek or the tremendous intrusion upon the attorney-client relationship that it represents.  They simply act as if it is commonplace for lawyers to obtain virtually unlimited access to the litigation work product of former (and potential future) adverse parties and counsel.

The Opening Brief showed, and Thorpe and Hamrick do not challenge, that the materials at issue are (a) documents; (b) prepared by attorneys for parties in then-active litigation (P&C's clients, Gerahty and Burke; or the government); (c) for the specific

purpose of litigating claims on behalf of those parties. Opening Br. at 26-30. There is no dispute, therefore, that the documents at issue are paradigmatic attorney work product at the core of the protection established by *Hickman v. Taylor*, 329 U.S. 495 (1947).

Instead, Thorpe and Hamrick's demand for P&C's work product is based upon three arguments. First, they contend that P&C's core work product is discoverable because the law purportedly does not protect third-party work product from disclosure. Opp. at 25-27. Second, they assert that P&C waived work product protection by disclosing materials to the government, because the common interest among P&C's clients and the government supposedly did not extend to certain topics. Opp. at 30-31. Third, they assert, without support, that they have a "substantial need" for P&C's work product. Opp. at 31. Each of these arguments is wrong.

A.      **The Court Should Protect P&C's Third-Party Work Product**

In the Opening Brief, P&C established that some courts, <u>including the D.C. Circuit</u>, have applied Rule 26(b)(3) to protect the work product materials of third parties. Opening Br. at 13, citing *In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988) (holding that non-party subpoena recipient had established applicability of the work product doctrine, but remanding for consideration of the requesting party's "substantial need").

Nonetheless, recognizing that some other courts limit Rule 26(b)(3) to the work product of parties to the litigation in which the documents are sought, the Opening Brief established that even courts that find that Rule 26(b)(3) is limited to party work product routinely protect non-party attorney work product under a wide variety of legal theories. Opening Br. at 13-17. In the Opening Brief, P&C described four independent bases for protecting P&C's work product in this case. The Opposition fails to respond to two of those independent bases (thereby conceding their applicability) and does not rebut the applicability of the other two.

1.    The Court Should Protect P&C's Work Product Under Rule 26(c)

In the Opening Brief, P&C established that, even if Rule 26(b)(3) is inapplicable to non-party work product, the intrusion upon non-party work product is a cognizable "undue burden" that warrants the entry of a protective order under Rule 26(c).  Opening Br. at 16-17.  Indeed, "requiring [a third party] to provide its [work product] information to a potentially adverse party … would be 'unduly burdensome' and therefore, unjust." *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 699 (N.D. Ga. 2007); *see also In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603, *33-34 (E.D. Pa. Nov. 29, 2006) (recognizing the "undue burden of disclosing third-party work product"); *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 772 (M.D. Pa. 1985) ("if a party to litigation is partially protected by Rule 26(b)(3) from having to disclose certain information to an opposing party, it is unduly 'burdensome' and therefore, unjust, to require a non-party to deliver the same kind of information to a party who may subsequently join the non-party in the litigation").  Here, Thorpe and Hamrick make no secret of their intent to assert claims against P&C.  *See* Opp. at 3, 20 (stating that "if discovery in [this case] … uncovers misconduct by P&C, it will be up to Thorpe to decide whether or how to pursue that"); *id.* at 3, 32 (accusing P&C of being "the direct beneficiary of a cover-up").  Accordingly, P&C moved not only to quash the Subpoena pursuant to Rule 45, but also for a protective order pursuant to Rule 26(c).  *See* Motion at 1; Opening Br. at 16-17, 27, 30.

Thorpe and Hamrick have not responded to this argument.  They do not dispute that, as P&C argued (Opp. at 16), the disclosure of non-party work product is itself an "undue burden" that warrants the entry of a protective order.  Indeed, Thorpe and Hamrick's brief does not even cite Rule 26(c) or refer to P&C's alternative request for a protective order.  "'If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.'"  *Dorsey v. Executive Office for U.S. Attorneys*, 2013 U.S. Dist. LEXIS 28739, *6 (D.D.C. Mar. 1, 2013), *quoting Day*

*v. D.C. Dept. of Consumer & Reg. Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002). Because Thorpe and Hamrick have not disputed or countered P&C's argument that the "undue burden" of Thorpe and Hamrick's intrusion upon P&C's work product warranted entry of a protective order pursuant to Rule 26(c), the Court should grant the requested protective order.

    2.    The Court Should Protect P&C's Work Product Under Rule 45

In the Opening Brief at 16, P&C established that, even if Rule 26(b)(3) is inapplicable, Rule 45 itself specifically permits a court to protect non-party work product. *Allied Irish Banks, p.l.c. v. Bank of America*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (Rule 45 specifically permits non-party to seek protection for work product); *ASARCO, LLC v. Americas Mining Corp.*, 2007 U.S. Dist. LEXIS 84604, *17 (D. Ida. Nov. 15, 2007) (Rule 45 "protects against discovery of third-party work product in appropriate cases"); *Carnes*, 244 F.R.D. at 699 ("Rule 45 … suggest[s] that the scope of [work product] protection should extend to a non-party …"); *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603 at *32-33 (Rule 45 "is broad enough to include protection against discovery of third-party work product in appropriate cases"). Accordingly, P&C sought protection for its work product pursuant to Rule 45. Motion at 1; Opening Br. at 16.

The Opposition does not refute this basic proposition. To the contrary, the Opposition ignores this argument in its entirety. Because Thorpe and Hamrick have not countered P&C's argument that Rule 45 protects P&C's third-party work product, the Court should treat the argument as conceded. *Dorsey*, 2013 U.S. Dist. LEXIS 28739 at *6; *Day*, 191 F. Supp. 2d at 159.

    3.    The Court Should Prevent P&C's Work Product from Disclosure
          to Potential Litigation Adversaries

As set forth in the Opening Brief, many courts construe the partial codification in Rule 26(b)(3) to protect materials created by or for entities that might later become adverse to the party seeking work product information, recognizing that to hold otherwise

would risk the misuse of the subpoena power.  Opening Br. at 14-15.  Thorpe and

Hamrick cite no contrary authority, and do not dispute this principle.  Instead, they argue

that this authority does not prevent the disclosure of P&C's work product in this case

because there is no danger that P&C's <u>clients</u> will become adverse to Thorpe and Cross.

Opp. at 29.

Thorpe and Cross misunderstand the work product doctrine.  While attorney-

client privilege belongs to the client and may be claimed only by the client, the work

product doctrine protects both the client <u>and the attorney</u>.  *See In re: Sealed Case*, 29

F.3d 715, 718 (D.C. Cir. 1994) ("'work product privilege belongs to the lawyer as well as

the client'"), *citing and quoting In re: Sealed Case*, 676 F.2d 793, 812 n.75 (D.C. Cir.

1982); *see also Solis v. Food Employers Labor Relations Ass'n.*, 644 F.3d 221, 231 (5th

Cir. 2011) ("the work product doctrine belongs to the attorney").  Because P&C itself is

entitled to the protection of the work product doctrine, the possibility that Thorpe and

Hamrick might later sue P&C is no different from the possibility that they might later sue

P&C's clients.  Either possibility warrants quashing the Subpoena.  *See*, *e.g.*, *Jean v. City

of New York*, 2010 U.S. Dist. LEXIS 2282, *6-7 (E.D.N.Y. Jan. 12, 2010) (extending

work product protection to non-party district attorney because "there is at least the

possibility of further litigation between the DA and the plaintiff" seeking documents);

*Carnes*, 244 F.R.D. 694, 699 (N.D. Ga. 2007) (extending work product protection to non-

party who "may be a party to litigation at some point in the future," because it would be

"unjust" to require the non-party to provide its work product to a potentially adverse

party).

Here, there is no dispute that there is at least "the possibility of further litigation"

between P&C and Thorpe and Hamrick.  Thorpe and Hamrick admit as much.  Opp. at 3,

22 ("If discovery in the malpractice case … uncovers misconduct by P&C, it will be up

to Thorpe to decide whether or how to pursue that"); *id.* at 21 (stating that Thorpe and

Hamrick contend "that P&C, in fact, misused or mishandled Thorpe's privileged,

confidential information").  It would be a gross miscarriage of justice to permit Thorpe

and Hamrick to obtain P&C's attorney work product in this case for use in a subsequent

action against P&C.  *Zagklara v. Sprague Energy Corp.*, 2011 U.S. Dist. LEXIS 56782,

*6-7 (D. Me. May 26, 2011) ("That possibility is not one that would be countenanced by

any court interpreting the work product doctrine or Rule 26(b)(3)"); *Jean*, *supra*; *Carnes*,

*supra*.

> 4.   The Court Should Protect P&C's Work Product Under the
> *Hickman* Rule, Which Is Broader than Rule 26(b)(3)

As set forth in the Opening Brief at 15, "the work-product doctrine articulated in

*Hickman* and its progeny … is broader than the protection supplied by Rule 26(b)(3)."

*Crosby v. City of New York*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010).  Accordingly, non-

parties may invoke work product protection when doing so "vindicate[s] the purposes

underlying the [*Hickman*] doctrine," *i.e.*, protection of attorneys' ability to formulate

legal theories and prepare cases without intrusion from adversaries, preventing opponents

from "free-loading" off of adversaries' work, and preventing interference with litigation.

*Crosby*, 269 F.R.D. at 277.  Thorpe and Hamrick agree.  *See* Opp. at 28-29.

They contend, however, that the protection of P&C's work product in this case

would not serve the purposes underlying *Hickman*, for the sole reason that P&C's clients

purportedly would not be harmed by the disclosure.  Opp. at 29.  But the work product

rule articulated in *Hickman* does not depend upon a case-by-case evaluation of the harm

to any particular party from disclosure.  Instead, it is focused on protection of the

adversary system in general, which would suffer if attorneys had an incentive to limit the

scope or candor of their analysis of their clients' cases for fear that adversaries would be

able to obtain their work product.  *Hickman*, 329 U.S. at 511 ("Were such materials open

to opposing counsel on mere demand, much of what is now put down in writing would

remain unwritten. … Inefficiency, unfairness and sharp practices would inevitably

develop in the giving of legal advice and in the preparation of cases for trial").  If, as

Thorpe and Hamrick propose, litigants could freely intrude upon the "zone of privacy in which a lawyer can prepare and develop legal theories and strategy," *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998), it would do exactly what *Hickman* attempted to prevent—chill the thorough and candid investigation and analysis that is the backbone of the adversary system.

Moreover, Thorpe and Hamrick clearly intend to "freeload" off of P&C's work. Thorpe and Hamrick obviously hope to turn the work that P&C's did on behalf of P&C's own clients to Thorpe and Hamrick's own advantage, the very definition of "freeloading." And if P&C's work product does not support Thorpe and Hamrick's claims (in this case or in potential litigation against P&C), they still will use it to learn P&C's confidential legal theories and to formulate responses to those theories, rather than doing their own work to anticipate potential issues.

Protection of P&C's work product thus serves the interests underlying the *Hickman* rule. The Court therefore should apply the common-law work product rule— which is broader than Rule 26(b)(3)—to protect P&C's work product.

## B.   P&C Did Not Waive Work Product Protection by Disclosure to the Government

Thorpe and Hamrick argue that P&C cannot claim any work product protection for communications with the government because (according to them) the disclosure to the government itself constitutes a waiver of work product. Opp. at 30 ("P&C … waived any privilege relating to communications with the government" on certain topics). They assert that while P&C did share a common interest with the government in the prosecution of the GSK Lawsuits, it had no such common interest in communications relating to first-to-file matters, the quality of C&B's services, and the fee dispute between C&B and Thorpe and Hamrick.[2]  *Id.*

───────────────

[2] As set forth below, this is irrelevant, since disclosure to the government—with or without a common interest—did not waive work product protections. But it is also

As an initial matter, this argument applies only to Modified Request 3 and to some of the documents sought in Modified Requests 5 and 11, which seek, among other things, P&C's correspondence with the government. Opp. at 15-16. It does not apply to P&C work product that was not provided to the government, including P&C's internal documents that refer or relate to communications with C&B or with the government (Modified Requests 2, 4), or documents sought in Requests 5 and 11 other than communications with the government.

In any event, Thorpe and Hamrick, once again, misunderstand the work product doctrine. As set forth in the Opening Brief at 27-28, the work product protection (as opposed to the attorney-client privilege) is not waived by any disclosure to a third party; instead, it is waived only by a disclosure "inconsistent with the maintenance of secrecy from the disclosing party's adversary." *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010), *quoting Rockwell Int'l. Corp. v. U.S. Dep't. of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001) and *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). Although P&C asserted this argument in the Opening Brief at 27-28, Thorpe and Hamrick do not even address it in the Opposition, and therefore have conceded the issue. Irrespective of the topic of P&C's communications with the government, those communications were not "inconsistent with the maintenance of secrecy" from Thorpe and Hamrick, and therefore neither P&C nor the government waived work product protection by communicating with each other.

---

untrue. To the extent there were discussions with attorneys in the office for the United States Attorney for the District of Massachusetts concerning the issues described in Modified Requests 3-4, that office's ability to investigate GSK's misconduct was a by-product of, and was enhanced by, the status and participation of P&C's clients as whistleblower-plaintiffs. Thus, P&C's clients and the United States Attorney's Office for the District of Massachusetts shared a common interest in establishing that P&C's clients had a right to assert their claims and a resulting incentive to assist the government in its investigation. And Thorpe and Hamrick do not even argue that P&C and the government lacked a common interest as to the documents sought by Modified Request 5, which requests documents related to P&C's review of documents in the prosecution of the litigation.

**C.** **Thorpe and Hamrick Cannot Obtain P&C's Work Product Under the "Substantial Need" Exception**

Thorpe and Hamrick, finally, contend that they are entitled to P&C's work product under the "substantial need" exception, which provides that certain work product documents may be disclosed upon a showing that a party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. Proc. 26(b)(3)(A)(ii).

First, this exception is irrelevant. It does not permit the disclosure of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," which must be protected from discovery. Fed. R. Civ. Proc. 26(b)(3)(B). Here, Thorpe and Hamrick do not seek fact work product, *i.e.*, facts gathered during a P&C investigation of the sufficiency of Thorpe and Hamrick's complaint, of first-to-file issues, of the document review project, or of the pending fee dispute. To the contrary, the facts concerning those matters are discrete and already within Thorpe and Hamrick's possession. Instead, Thorpe and Hamrick seek P&C's analysis, opinions, and notes of communications concerning those matters.[3] Opp. at 15-16, Modified Requests 3-5, 11. That is paradigmatic "mental impression" work product beyond the scope of any "substantial need" exception, and Thorpe and Hamrick are not entitled to it. Fed. R. Civ. Proc. 26(b)(3)(B).

Second, and independently, the "substantial need" exception applies only when "the party shows that it has substantial need" for the documents. Fed. R. Civ. Proc.

---

[3] In fact, the documents sought in Modified Requests 2 and 4 clearly are not discoverable upon a mere showing of "substantial need." Those Modified Requests seek documents that "reflect or refer" to communications between P&C and the government or C&B, *i.e.*, P&C's attorney notes of those communications. But "substantial need" is not sufficient to warrant disclosure of attorney notes of oral communications. *See Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) (declining to decide whether attorneys' "notes and memoranda" of "oral statements" can ever be discoverable, but holding that "such work product cannot be disclosed simply on a showing of substantial need and inability to obtain …"). Thorpe and Hamrick do not even argue that they have satisfied any burden greater than "substantial need." Opp. at 31.

26(b)(3)(A)(ii) (emphasis added).  But Thorpe and Hamrick have not even attempted any such showing.  The entirety of their "substantial need" argument consists of the conclusory assertion that they have satisfied their burden, without any reference to evidence and without any explanation whatsoever.  Opp. at 31.  Thus, the "substantial need" exception cannot apply.

### D.   **P&C's Work Product Is Not Relevant**

P&C also argued in the Opening Brief that its internal work product and its communications with the government are not relevant.  Opening Br. at 25-26, 29.  Thorpe and Hamrick disagree.  They assert that their Modified Requests seek documents relating to "[f]irst-to-file matters, the quality of C&B's services, and the fee dispute," and that, because those issues are "core issues" in the underlying lawsuit, the documents therefore are highly relevant.  Opp. at 25

This is a non-sequitur.  While the <u>facts</u> underlying "first-to-file matters, the quality of C&B's services, and the fee dispute [between C&B and Thorpe and Hamrick]" may be relevant in the underlying matter, P&C is not in possession of any facts about those issues beyond those already in Thorpe and Hamrick's possession.  Thorpe and Hamrick already have all of the relevant facts concerning the filing of both their complaints and the complaints of P&C's clients, and they (and not P&C) have all of the underlying facts about the quality of C&B's services and their fee dispute with C&B.  Not surprisingly, Thorpe and Hamrick's Subpoena is not aimed at discovery of <u>facts</u> that are otherwise unavailable to them.  Instead, they seek P&C's <u>opinion and analysis</u> regarding the underlying issues.  But P&C is neither a party nor an expert in their litigation, and P&C's opinions and analysis are irrelevant.  Evidence of P&C's legal analysis, P&C's opinions, and P&C's strategy cannot make any "fact of consequence" "more or less probable than without the evidence."  Fed. R. Evid. 401.  Thus, P&C's work product falls outside the scope of discovery.  Fed. R. Civ. Proc. 26(b)(1); *see also Andrades v. Holder*, 286 F.R.D. 64, 66 (D.D.C. 2012) ("[a] showing of relevance can be

viewed as a showing of need; … one is presumed to have no need of a matter not relevant to the subject matter involved in the pending action") (internal quotes and citations omitted).

### E.   The Burden of Searching For and Privilege-Logging Irrelevant Work Product Documents Is Unwarranted

As set forth in the Opening Brief at 22, 28, 30, in light of the clearly protected nature of the documents sought and the lack of any relevance of those documents to the pending litigation, the burden of preparing a document-by-document privilege log would far outweigh the value of doing so.  The narrowing of the Subpoena to the Modified Requests does not cure this problem.  All of the documents sought by Modified Requests 2-5 and 11 are protected for the same reason:  they are, by definition, documents prepared by lawyers for the purpose of representing clients in active litigation.  And given the issues on which Thorpe and Hamrick still seek P&C's work product, the preparation of a privilege log still would require review of all of P&C's communications with the government and substantial portions of P&C's other work product documents created in a decade-long litigation so that P&C could separate the responsive documents from the non-responsive ones.  Accordingly, for the reasons set forth in the Opening Brief at 22, 28, and 30, the burden imposed by Modified Requests 2-5 and 11 outweighs the value of searching for documents and preparing a privilege log, and the Court should quash the subpoena or issue a protective order as to those Modified Requests.

## VI.   THE COURT SHOULD NOT COMPEL PRODUCTION OF DOCUMENTS NOT SOUGHT BY THE SUBPOENA (MODIFIED REQUESTS 5 AND 11)

Most of Thorpe and Hamrick's Modified Requests narrow comparable requests in the original Subpoena.  But two of them actually represent an attempt to expand the requests in the Subpoena in ways that are linguistically subtle but practically substantial.

The Subpoena originally sought certain documents that comprised, reflected, or referred to communications with the Government.  Dkt. 1-1 at Requests 5-6, 11-12, 17-20.  Modified Request No. 5, however, now seeks "all documents, including any

communications between P&C and the Government … referring to the data-mining project and/or the protective order entered in the GSK Lawsuits."  Opp. at 15 (emphasis added).  Modified Request No. 11 now seeks "documents, <u>including</u> any communications with the Government … referring to Plaintiffs' malpractice claim and C&B's fee dispute."  *Id.* (emphasis added).  In other words, while the Modified Requests "include" documents comprising or reflecting communications with the government, they no longer are limited to such documents; instead, they seek all of P&C's internal documents on those topics, whether or not communicated to anybody.  Thorpe and Hamrick have no legal basis to seek, through an Opposition to a motion to quash the Subpoena, the production of documents that the Subpoena itself did not seek, and the Court should not endorse Thorpe and Hamrick's attempt to expand the scope of the requested production.

## VII.  <u>P&C MET AND CONFERRED IN GOOD FAITH</u>

Finally, Thorpe and Hamrick assert that P&C violated its meet-and-confer obligations.  This is untrue.  P&C provided Thorpe and Hamrick with its objections to the Subpoena on April 5, 2013, and participated in a lengthy discussion of those objections on April 17, 2013.  Hasegawa Decl. (April 24, 2013), ¶ 17.  But during that discussion, it was apparent that the parties differed on three issues that prevented any substantial narrowing of the Subpoena.

First, Thorpe and Hamrick continued to insist (as they do in the Opposition) that P&C must produce duplicate copies of documents that they can obtain, or have obtained, from defendant C&B.  Thorpe and Hamrick's proposed "narrowing" could not and did not resolve P&C's objection that such discovery is unreasonably duplicative and unduly burdensome.

Second, Thorpe and Hamrick continued to assert (as they do in the Opposition) that they are entitled to discovery of P&C's work product prepared in representing P&C's clients in the GSK litigation.  The proposed "narrowing" of Thorpe and Hamrick's

demands for such work product obviously is beside the point—P&C does not consent (and is not required to consent) to the disclosure of any such work product.

Third, Thorpe and Hamrick continued to insist upon the disclosure of internal P&C information for potential use against P&C.  Because P&C does not believe that Thorpe and Hamrick have any right to use discovery in their malpractice case to explore unrelated potential claims against P&C, the parties unsurprisingly were unable to reach agreement in meet-and-confer discussions.

In sum, the parties' failure to reach agreement in meet-and-confer discussions was a result of their differences on key substantive issues, not of any failure to confer in good faith.

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, P&C's Motion to Quash, or in the Alternative for Protective Order re: Subpoena should be granted.


Dated:  June 21, 2013                    /s/

> Stephen Hasegawa
>  (admitted *pro hac vice*)
> PHILLIPS & COHEN LLP
> 100 The Embarcadero, Suite 300
> San Francisco, CA 94105
> Tel:  (415) 836-9000
> Fax:  (415) 836-9001
> Email:  ssh@pcsf.com
>
> Peter W. Chatfield, Esq.
>  (D.C. Bar No. 418576)
> PHILLIPS & COHEN LLP
> 2000 Massachusetts Ave., N.W.
> Washington, D.C. 20036
> Tel:  (202) 833-4567
> Fax:  (202) 833-1815
> Email:  peter@phillipsandcohen.com
>
> Attorneys for non-party subpoena recipient
> PHILLIPS & COHEN LLP

## PROOF OF SERVICE

I am employed in San Francisco, California. I am over the age of 18 and not a party to the within action. My business address is 100 The Embarcadero, Suite 300, San Francisco, CA 94105.

On June 21, 2013, I served the foregoing documents described as NON-PARTY PHILLIPS & COHEN LLP'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER RE: SUBPOENA (DOC. NO. 1) upon all parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

**[X]  (By Federal Express)** I enclosed the documents in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at San Francisco, California addressed as indicated on the attached Service List.

**[X] (By ECF)** A true and correct copy of the foregoing document has been served via ECF to the parties as indicated on the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed this 21st day of June, 2013.

/s/
_____
Janice LeBon

**SERVICE LIST**

| | |
|---|---|
| Matthew J. Fogelman<br>Fogelman & Fogelman LLC<br>100 Wells Avenue<br>Newton, MA 02459<br>(617) 559-1530<br>mjf@fogelmanlawfirm.com | Counsel for Plaintiffs/Cross-Defendants<br>Gregory Thorpe and Blair Hamrick<br><br>*[service via FedEx]* |
| William J. Leonard<br>Richard P. Limburg<br>Joseph J. McGovern<br>Obermayer Rebmann Maxwell & Hippel LLP<br>1617 John F. Kennedy Blvd.<br>Philadelphia, PA 19103<br>(215) 665-3000<br>william.leonard@obermayer.com<br>richard.limburg@obermayer.com<br>joseph.mcgovern@obermayer.com | Counsel for Plaintiffs/Cross-Defendants<br>Gregory Thorpe and Blair Hamrick<br><br>*[service via ECF]* |
| George A. Berman<br>Alan K. Tannenwald<br>Peabody & Arnold LLP<br>Federal Reserve Plaza<br>600 Atlantic Avenue<br>Boston, MA 02210<br>(617) 951-2100<br>gberman@peabodyarnold.com<br>atannenwald@peabodyarnold.com | Counsel of Record as to Plaintiffs' Claims<br>Against Defendants<br><br>*[service via FedEx]* |
| Michael Tabb<br>Greene LLP<br>One Liberty Square, Suite 1200<br>Boston, MA 02109<br>(617) 261-0040<br>matabb@greenellp.com | Counsel of Record as to Defendant Cross &<br>Bennett L.L.C.'s Counterclaim Against<br>Plaintiffs<br><br>*[service via FedEx]* |

NON-PARTY P&C'S REPLY RE MOTION TO QUASH OR FOR PROTECTIVE ORDER