UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE THIRD-PARTY SUBPOENA TO PRODUCE DOCUMENTS | Case No. 1:13-mc-00405-JEB-DAR |
| GREGORY THORPE and BLAIR HAMRICK,<br><br>                    Plaintiffs,<br><br>                    v.<br><br>KEITH F. CROSS, JOSEPH F. BENNETT, and CROSS & BENNETT L.L.C.,<br><br>                    Defendants. | Related to:<br>No. 1:12-cv-11632-RWZ<br>Pending in the DISTRICT OF MASSACHUSETTS |

**<u>NON-PARTY PHILLIPS & COHEN LLP'S MEMORANDUM IN RESPONSE TO THORPE AND HAMRICK'S OBJECTION (DKT. 20) TO MAGISTRATE JUDGE'S ORDER (DKT. 17)</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ..............................................................................................................1

II.   SUMMARY OF FACTS AND PROCEDURAL HISTORY ............................................3

    A.    The GlaxoSmithKline Lawsuits...........................................................................3

    B.    Phillips & Cohen's Tangential Relationship to this Lawsuit and Thorpe
        and Hamrick's Subpoena .......................................................................................6

III.  THE MAGISTRATE JUDGE'S RULING IS ENTITLED TO GREAT
    DEFERENCE AND CANNOT BE SET ASIDE ABSENT A SHOWING OF
    CLEAR ERROR ..............................................................................................................9

IV.   THE MAGISTRATE JUDGE CORRECTLY FOUND THAT THE BURDEN OF
    COMPLIANCE WITH THE SUBPOENA WOULD SUBSTANTIALLY
    OUTWEIGH THE VALUE OF THE DOCUMENTS SOUGHT....................................11

    A.    The Magistrate Judge Correctly Found that Compliance with the
        Subpoena Would Impose a Substantial and Undue Burden .................................11

    B.    The Magistrate Judge Correctly Found that the Documents Sought Were
        of Limited or No Relevance..................................................................................13

        1.    The Magistrate Judge  Correctly Found that the Subpoena Was a
            Pretext for Seeking Information to Be Used Against P&C ......................13

        2.    The Magistrate Judge Correctly Found that P&C's
            Communications with the Government (Modified Requests 3-5
            and 11) Are Not Relevant .......................................................................15

        3.    The Magistrate Judge Correctly Found that P&C's Internal
            Memoranda Concerning Communications with C&B (Modified
            Request 2) Are Not Relevant ..................................................................17

        4.    The Magistrate Judge Correctly Found that the Burden of
            Producing Communications with C&B (Modified Requests 1 and
            10) Outweighed the Likely Benefit of Production....................................18

V.    MODIFIED REQUESTS 2-5 AND 11 SEEK PROTECTED WORK PRODUCT..........23

    A.    The Court Should Protect P&C's Third-Party Work Product ...............................24

        1.    The Court Should Protect P&C's Work Product Under Rule 26(c) ..........25

        2.    The Court Should Protect P&C's Work Product Under Rule 45...............26

        3.    The Court Should Prevent P&C's Work Product from Disclosure

NON-PARTY P&C'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

to Potential Litigation Adversaries ........................................................... 27

    4.     The Court Should Protect P&C's Work Product Under the *Hickman* Rule, Which Is Broader than Rule 26(b)(3) .............................. 29

B.     P&C Did Not Waive Work Product Protection by Disclosure to the Government ................................................................................................... 30

C.     Thorpe and Hamrick Cannot Obtain P&C's Work Product Under the "Substantial Need" Exception ................................................................... 31

VI.    THORPE AND HAMRICK IRREVOCABLY WAIVED THEIR ARGUMENT AS TO DOCUMENTS NOT COVERED BY THE MODIFIED REQUESTS ( "MODIFIED REQUEST 12") ............................................................................ 33

VII.   CONCLUSION .............................................................................................. 34

# TABLE OF AUTHORITIES

**Federal Cases**

*Allied Irish Banks, p.l.c. v. Bank of America,*
  252 F.R.D. 163 (S.D.N.Y. 2008) ................................................................. 26

*American Society for Prevention of Cruelty to Animals v. Feld Entertainment, Inc.,*
  659 F.3d 13 (D.C. Cir. 2011) ................................................................. 9, 10

*Andrades v. Holder,*
  286 F.R.D. 64 (D.D.C. 2012) ................................................................. 16

*ASARCO, LLC v. Americas Mining Corp.,*
  2007 U.S. Dist. LEXIS 84604 (D. Ida. Nov. 15, 2007) ............................... 26

*Basinger v. Glacier Carriers, Inc.,*
  107 F.R.D. 771 (M.D. Pa. 1985) ............................................................... 25

*Borden v. Sec'y. of Health & Human Servs.,*
  836 F.2d 4 (D.C. Cir. 1987) ......................................................... 26, 27, 34

*Burlodge Ltd. v. Standex Internat'l. Corp.,*
  257 F.R.D. 12 (D.D.C. 2009) ................................................................. 18, 21

*Carnes v. Crete Carrier Corp.,*
  244 F.R.D. 694 (N.D. Ga. 2007) ................................................... 25, 27, 28, 29

*Coffeeville Res. Ref. & Mktg. LLC v. Liberty Surplus Ins. Corp.,*
  2008 U.S. Dist. LEXIS 91224 (E.D. Ark. Nov. 6, 2008) ............................ 18

*Crosby v. City of New York,*
  269 F.R.D. 267 (S.D.N.Y. 2010) ............................................................... 29

*Day v. D.C. Dept. of Consumer & Reg. Affairs,*
  191 F. Supp. 2d 154 (D.D.C. 2002) ....................................................... 26, 27

*Dorsey v. Executive Office for U.S. Attorneys,*
  2013 U.S. Dist. LEXIS 28739 (D.D.C. Mar. 1, 2013) ............................... 26, 27

*Education Finance Council v. Oberg,*
  2010 U.S. Dist. LEXIS 102221 (D.D.C. Mar. 9, 2010) ............................ 18, 22

*Hickman v. Taylor,*
  329 U.S. 495 (1947) ......................................................... 24, 29, 30

*In re Sealed Case,*
    856 F.2d 268 (D.C. Cir. 1988) .................................................................... 24

*In re Student Finance Corp.,*
    2006 U.S. Dist. LEXIS 86603 (E.D. Pa. Nov. 29, 2006) ....................................... 25, 27

*In re: Sealed Case,*
    29 F.3d 715 (D.C. Cir. 1994) .................................................................... 28, 32

*In re: Sealed Case,*
    676 F.2d 793 (D.C. Cir. 1982) .................................................................... 28

*Jean v. City of New York,*
    2010 U.S. Dist. LEXIS 2282 (E.D.N.Y. Jan. 12, 2010) ......................................... 28, 29

*Klayman v. Judicial Watch, Inc.,*
    628 F. Supp. 2d 84 (D.D.C. 2009) ................................................................ 26, 34

*Moore v. Chertoff,*
    2007 U.S. Dist. LEXIS 33684 (D.D.C. May 8, 2007) ................................................ 10

*Nathan v. Ohio State Univ.,*
    2013 U.S. Dist. LEXIS 4275 (S.D. Ohio Jan. 10, 2013) ............................................ 20

*Nidec Corp. v. Victor Co.,*
    249 F.R.D. 575 (D.D.C. 2007) ..................................................................... 18

*Payne v. District of Columbia,*
    859 F. Supp. 2d 125 (D.D.C. 2012) .............................................................. 9, 10, 20

*Rockwell Int'l. Corp. v. U.S. Dep't. of Justice,*
    235 F.3d 598 (D.C. Cir. 2001) .................................................................... 31

*Snowden v. Connaught Labs., Inc.,*
    136 F.R.D. 694 (D. Kan. 1991) ................................................................... 10

*Software Rights Archive, LLC v. Google, Inc.,*
    2009 U.S. Dist. LEXIS 43835 (D. Del. May 21, 2009) ............................................. 19

*Solis v. Food Employers Labor Relations Ass'n.,*
    644 F.3d 221 (5th Cir. 2011) ..................................................................... 28

*Steven R. Perles, P.C. v. Kagy,*
    394 F. Supp. 2d 68 (D.D.C. 2005) ................................................................ 9, 10

*United States v. Adlman,*
    134 F.3d 1194 (2d Cir. 1998) ..................................................................... 30

*United States v. AT&T,*

642 F.2d 1285 (D.C. Cir. 1980) ..................................................................................... 31

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010) ............................................................................ 31, 32

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................................................ 32

*Viacom Internat'l. Inc.v. YouTube, Inc.*,
    2008 U.S. Dist. LEXIS 79777 (N.D. Cal. Aug. 18, 2008) ......................................... 21

*Wyoming v. U.S. Dept. of Agriculture*,
    208 F.R.D. 449 (D.D.C. 2002) ................................................................................. 18

*Zagklara v. Sprague Energy Corp.*,
    2011 U.S. Dist. LEXIS 56782 (D. Me. May 26, 2011) ............................................. 29

**State Cases**

*Hopp & Flesch, LLC v. Backstreet*,
    123 P.3d 1176 (Colo. 2005) ..................................................................................... 15

**Federal Statutes**

28 U.S.C. § 636(b)(1)(A) ................................................................................................ 9, 13

28 U.S.C. § 636(b)(1)(B) .............................................................................................. 10, 19

31 U.S.C. § 3729 ................................................................................................................. 1

31 U.S.C. § 3730(b)(5) ........................................................................................................ 4

**Federal Rules**

Fed. R. Civ. Proc. 26(b)(1) .............................................................................................. 16

Fed. R. Civ. Proc. 26(b)(2)(C)(i) ................................................................................ 18, 19

Fed. R. Civ. Proc. 26(b)(3) ....................................................................................... passim

Fed. R. Civ. Proc. 26(b)(3)(A)(ii) ................................................................................... 32

Fed. R. Civ. Proc. 26(b)(3)(B) ......................................................................................... 32

Fed. R. Civ. Proc. 26(c) .............................................................................................. 25, 26

Fed. R. Civ. Proc. 45 .................................................................................................... 26, 27

Fed. R. Civ. Proc. 72(a) ................................................................................... 9, 10, 13, 19

NON-PARTY P&C'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

Fed. R. Civ. Proc. 72(b) ................................................................................................. 19

Fed. R. Civ. Proc. 72(b)(3) ........................................................................................... 10

Fed. R. Evid. 401 ........................................................................................................... 16

**NON-PARTY P&C'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S ORDER**

## MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

Non-party Phillips & Cohen LLP ("P&C")—a law firm that has never represented plaintiffs Gregory Thorpe or Blair Hamrick, but that represented different clients in the lawsuit from which this malpractice action arises—hereby responds to Thorpe and Hamrick's objections to the Magistrate Judge's Memorandum Order (the "Order") granting P&C's motion to quash, or in the alternative for a protective order, concerning a document subpoena (the "Subpoena") that Thorpe and Hamrick served on P&C.

## I.     INTRODUCTION

P&C moved to quash, or for protection from, a burdensome subpoena that Thorpe and Hamrick propounded to P&C not for the purpose of litigating the claims at issue in their pending lawsuit, but rather for the purpose of gathering information for use against P&C, who is not presently a defendant in any action.  The Magistrate Judge correctly found, based on the evidence properly before the Court, that the Subpoena imposed an undue burden that outweighed the negligible relevance of the documents sought.  Dkt. 17. Although the Magistrate Judge acted within her discretion in so ruling, and although the Magistrate Judge's Order was not "clearly erroneous" or "contrary to law," Thorpe and Hamrick nonetheless ask this Court to second-guess the Magistrate Judge's ruling.

This malpractice lawsuit has its origins in an underlying series of whistleblower lawsuits (the "GSK lawsuits") filed against GlaxoSmithKline LLC ("GSK") under the False Claims Act (the "FCA") and similar state laws.  The FCA and analogous state statutes permit persons with knowledge of fraud (sometimes called "relators") to sue on behalf of government victims of that fraud; if the government obtains a judgment or settlement as a result of those "*qui tam*" suits, the *qui tam* plaintiffs may share in the government's recovery.  *See*, *e.g.*, 31 U.S.C. § 3729 *et seq*.  The whistleblowers' reward in a *qui tam* suit is commonly known as the "relators' share."

Thorpe and Hamrick hired Keith Cross and Cross & Bennett (collectively, "C&B") to represent them in a whistleblower suit against GSK concerning the off-label marketing of certain drugs.  P&C filed a separate suit against GSK on behalf of two different whistleblowers alleging overlapping—but not identical—claims.  The government conducted a joint investigation of the allegations in both suits.  The two sets of plaintiffs agreed that Thorpe and Hamrick would receive 50% of the aggregate relators' share from both suits, and P&C's clients would receive the remaining 50% of that aggregate relators' share (this agreement is referred to herein as the "Relators' Share Agreement").  In 2012, the government settled the lawsuits against GSK.  Thorpe and Hamrick have received or will receive over $74 million for their participation in those suits (before payment of their attorneys' fees).

Thorpe and Hamrick, however, view their $74 million recovery as inadequate.  As soon as it became clear that they would be the beneficiaries of a substantial recovery, Thorpe and Hamrick began attempting to reduce the contingent fee they agreed to pay C&B for representing them, while simultaneously scheming to repudiate the Relators' Share Agreement and to claim a greater share of any settlement.  They now contend that C&B's representation of them in the GSK lawsuits was so substandard that Thorpe and Hamrick should be excused from their obligation to pay any legal fees to C&B, and that C&B instead should pay them another $75 million in damages.

Although Thorpe and Hamrick only assert claims against C&B, their Subpoena indicates that they are looking for a basis to sue P&C.  The Subpoena, in both its original form and as narrowed by Thorpe and Hamrick in their opposition to P&C's Motion to Quash (the "Motion"), seeks little non-privileged information relating to C&B's conduct (beyond documents that Thorpe and Hamrick have already obtained from C&B itself).  Instead, Thorpe and Hamrick sought, and continue to seek, broad categories of P&C's internal memoranda and communications with the Government (a co-party) relating to P&C's representation of its own clients in the GSK lawsuits, and to P&C's attorneys'

evaluation of the potential threats to P&C's clients from the competing suit that Thorpe and Hamrick filed.  Thus, although Thorpe and Hamrick's pending lawsuit concerns only the competence of the services that <u>C&B</u> rendered to them, the Subpoena is a naked attempt to gather information for use in evaluating, and perhaps litigating, a claim against <u>P&C</u>.  Thorpe and Hamrick's counsel admitted as much in meet-and-confer discussions.  That is an abuse of the subpoena power.

Because Thorpe and Hamrick seek documents that fall far outside the scope of permissible discovery, because the Subpoena seeks to impose unwarranted burdens far outweighing the purported relevance of the documents they seek, and because the Subpoena, even in its modified form, seeks documents exempt from discovery under the work-product doctrine, P&C moved for an order quashing the Subpoena or otherwise precluding the discovery sought.  The Magistrate Judge granted that motion (Dkt. 17), and Thorpe and Hamrick now object to the Magistrate Judge's Order.

## II.  <u>SUMMARY OF FACTS AND PROCEDURAL HISTORY</u>

### A.  <u>The GlaxoSmithKline Lawsuits</u>

This case involves a dispute between Thorpe and Hamrick and their attorneys, C&B, over C&B's alleged malpractice and C&B's right to attorneys' fees for representing Thorpe and Hamrick in a *qui tam*, or "whistleblower" suit against GlaxoSmithKline LLC under the FCA and similar state statutes.

Thorpe and Hamrick, represented by C&B, filed one such suit.  Dkt. 1-3, ¶ 81; Hasegawa Decl. Ex. 5.[1]  Thomas Gerahty and Matthew Burke (neither of whom is a party in this litigation), represented by P&C, filed another.  Dkt. 1-3 at 96; Dkt. 1-4 at p. 23, ¶ 31.  The suits (collectively, the "GSK lawsuits") were coordinated for the purpose

---

[1] On April 23, 2013, P&C filed the Motion, and the accompanying Declaration of Stephen Hasegawa and Exhibits 1-6 thereto, in hard copy.  It appears, however, that Exhibit 5 was omitted from the electronic copy that the Court uploaded to the PACER system.

of the government's investigation of the whistleblowers' allegations, and later were formally consolidated.  *See*, *e.g.*, Dkt. 1-4, ¶¶ 35, 43, 76; Dkt. 1-5 at p. 8, ¶ 43, p. 13, ¶ 76.

The FCA provides that "when a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  As Thorpe and Hamrick explained in their complaint, "[t]he first to file rule only protects the claims that the relator actually asserts.  Where a subsequently filed complaint pleads facts and claims distinct from those pled in the first filed complaint, the relator who filed the second complaint will be considered the first-to-file with respect to those facts and claims."  Dkt. 1-3, ¶ 25.  Thorpe and Hamrick were the first to file a complaint against GSK containing certain claims.  According to Thorpe and Hamrick's own complaint, Gerahty and Burke were the first to file complaints against GSK asserting other claims.  Dkt. 1-3, ¶¶ 81, 91, 93, 105-06, 108, 129.  In addition, the complaints brought by P&C's clients—two senior GSK insiders with knowledge of company-wide activity—contained far more detail than Thorpe and Hamrick's complaint, and therefore bore less risk of being dismissed under Federal Rule of Civil Procedure 9(b).  Dkt. 1-3, ¶ 105; Dkt. 1-4 at p. 23, ¶ 31; Hasegawa Decl. Ex. 5; Dkt. 1-7.  Thus, both sets of plaintiffs faced risks that substantial portions of any recovery would go to the other set of plaintiffs.

In light of those risks, in early 2004, Thorpe, Hamrick, Burke, and Gerahty agreed that each would contribute their resources (including the resources of their respective attorneys, P&C and C&B) toward the overall success of the GSK Lawsuits, and that they would share any whistleblower reward resulting from their cases.  Dkt. 1-3, ¶¶ 112; Dkt. 1-4 at p. 23-24, ¶¶ 31, 33; Dkt. 1-5, ¶¶ 31, 33.  The plaintiffs in the GSK lawsuits agreed that Thorpe and Hamrick would receive 50% of the total relators' share in the GSK lawsuits; Gerahty and Burke would receive the other 50%.  Dkt. 1-3, ¶¶ 111-112; Dkt. 1-4 at p. 8, ¶ 43, p. 23, ¶ 33; Dkt. 1-5, ¶ 33.  As Thorpe and Hamrick acknowledge, in

reliance upon that agreement, P&C worked cooperatively with Thorpe and Hamrick's counsel to maximize the recovery by the government (to the benefit of all plaintiffs). Dkt. 1-3, ¶ 163 (stating that P&C did "the great majority of the work" on the GSK lawsuits).

In 2012, GSK and the government finalized a settlement of the GSK lawsuits for civil damages of $1.017 billion (as part of a $3 billion settlement that included criminal penalties). Dkt. 1-4 at p. 34, ¶¶ 78-79; Dkt. 1-5, ¶ 78-79. The settlement made Thorpe and Hamrick very rich men. Pursuant to their express, informed agreement to split the relators' share in the GSK lawsuits 50-50 with P&C's clients, Thorpe and Hamrick received, or are to receive, over $74 million from the settlement of the GSK lawsuits (prior to payment of attorneys' fees). Dkt. 1-4 at p. 35, ¶ 83; Dkt. 1-5, ¶ 83.

Nonetheless, Thorpe and Hamrick feel undercompensated. In September 2009, as soon as it became clear that a substantial recovery was highly probable—due in large part to years of P&C's work pursuant to all plaintiffs' agreement to pool their resources under the Relators' Share Agreement, *see* Dkt. 1-3, ¶ 163 —Thorpe and Hamrick began seeking ways to increase their share of that recovery. Thorpe schemed to repudiate the Relators' Share Agreement and to reduce Gerahty and Burke's share from 50% to "25-30%" of the total relators' share. Dkt. 1-4 at p. 30, ¶ 59; Dkt. 1-5, ¶ 59.

Thorpe and Hamrick also proposed to reduce C&B's agreed-upon contingency fee from 40% to 24% of their recovery and to associate new co-counsel with an 8% contingency fee, thereby reducing their overall contingency fee obligation from 40% to 32%. In October 2009, when C&B rejected that proposal, Thorpe and Hamrick fired C&B. Dkt. 1-4 at 31, ¶ 66; Dkt. 1-5 at 12, ¶ 66. The next day, Thorpe wrote to Cross, threatening that "[m]y legal options are endless, and could be highly detrimental to your future in the legal profession …. [Y]ou have more money than you need right now …." Dkt. 1-4 at 31-32, ¶ 67; Dkt. 1-5 at 12, ¶ 67. A week later, Thorpe again threatened that C&B's conduct might "trigger a malpractice suit and we would attempt to deny you

anything in the matter, up to and including any attorney fees and costs." Dkt. 1-4 at 32, ¶ 68; Dkt. 1-5 at 12, ¶ 68.

C&B did not yield to Thorpe's threats.  Thorpe and Hamrick sued C&B for malpractice, contending, as Thorpe had warned, that Thorpe and Hamrick need not pay C&B its agreed-upon contingent fee for C&B's work on the GSK lawsuits and that C&B additionally is liable for $75 million in damages to Thorpe and Hamrick.  Dkt. 1-3, ¶¶ 1, 194, 204.  C&B counterclaimed for payment of the 40% contingency fee to which Thorpe and Hamrick had agreed.  Dkt. 1-4 at 36.

**B.** **Phillips & Cohen's Tangential Relationship to this Lawsuit and Thorpe and Hamrick's Subpoena**

Thorpe and Hamrick's malpractice claims and C&B's counterclaim for fees do not depend in any way upon information in P&C's possession.  P&C is not a party in the lawsuit.  Neither Thorpe and Hamrick nor C&B have sought any relief from P&C or alleged any facts upon which any such relief could be sought.  P&C has never represented Thorpe or Hamrick in any lawsuit.  P&C possesses no documents that can shed any light on whether C&B adequately represented Thorpe and Hamrick.

Thorpe and Hamrick, however, are keenly interested in obtaining information about P&C.  That interest apparently derives from Thorpe's inquiry, a decade ago, about retaining P&C.  P&C's intake coordinator rejected that inquiry on the same day that it was reviewed, and no attorneys involved in the GSK lawsuits received any information relating to Thorpe's inquiry.  Dkt. 1-2, ¶ 8-10.

Thorpe and Hamrick nonetheless perceive Thorpe's rejected inquiry as an opportunity to enlarge their own share of the recovery.  Accordingly, they used their malpractice suit against C&B as a pretext to serve the Subpoena, seeking information to evaluate potential claims against P&C—a fact that Thorpe and Hamrick's counsel admitted, but now seek to deny.  In its original form, apart from a few requests seeking information equally available from C&B, the Subpoena sought extremely broad

categories of information concerning P&C's representation of its own clients (both in the GSK Lawsuits and in other, unrelated litigation) and its evaluation of potential clients. *See* Subpoena (Dkt. 1-1). When asked, in meet and confer discussions, whether they were seeking information to evaluate potential claims against P&C, Thorpe and Hamrick's counsel informed P&C that they would soon be issuing a letter to P&C seeking information relating to perceived (but unfounded) ethical concerns; they sent that letter on April 18, 2013. Dkt. 1-2, ¶ 19-20. Thorpe and Hamrick's counsel stated that many of the discovery issues raised by the Subpoena were dependent upon P&C's response to that letter. *Id.*, ¶ 19. Indeed, that letter was purportedly based upon documents that P&C had already produced in response to the Subpoena. *Id.*, ¶ 19-20. Thorpe and Hamrick's counsel also used those documents in an effort to convince a former P&C attorney to disclose information to Thorpe and Hamrick over P&C's objections. *Id.*, ¶ 20. And in their own filings before the Magistrate Judge, Thorpe and Hamrick stated that if their Subpoena uncovered information that they could use against P&C, "it will be up to Thorpe to decide whether or how to pursue that." Dkt. 11 at 3. Thorpe and Hamrick also accused P&C of being "the direct beneficiary of Defendants' malpractice and cover-up," and of "helping C&B to cover up the malpractice." *Id.* at 3, 11, 22.

In its memorandum in opposition to P&C's motion to quash (the "Opposition"), Thorpe and Hamrick narrowed the Subpoena to eleven "Modified Requests," and explicitly waived any disagreement as to other information sought by the Subpoena.[2] Dkt. 11 at 15-16. In addition, the parties reached a compromise eliminating their dispute as to Modified Requests 6-9. Accordingly, the only matters at issue before the Magistrate

---

[2] In some instances, the "Modified Requests" appear to seek information not requested in the Subpoena itself. In such instances, P&C construes the Modified Requests as limited by the scope of the original subpoena, since P&C obviously does not need to seek protection with respect to documents that no party has even requested.

Judge were Modified Requests 1-5 and 10-11.[3]  The Modified Requests, however, continued to focus on P&C's conduct and P&C's knowledge.  Apart from Modified Requests 1 and 10, which sought information exchanged with C&B (information that is equally available from C&B, a defendant in the case), the Modified Requests do not seek any documents that were shown to C&B.  Instead, they seek information concerning P&C's communications with its co-party, the Government, on matters relating to P&C's representation of its own clients in the GSK lawsuits (Modified Requests 3, 5, 11), and P&C's internal memoranda concerning communications with C&B and the government (Modified Requests 2, 4).  In light of the breadth of the information that Thorpe and Hamrick continue to seek, compliance with the subpoena would still require a review of countless communications, including all communications with C&B, all communications with the Government prior to March 2004 or after September 2009, and all internal memoranda created prior to March 2004.  Because Thorpe and Hamrick seek exclusively documents created for the purpose of litigating claims on behalf of P&C's clients, the Subpoena also would require a careful review by an attorney to identify work product documents, and the time-consuming preparation of an extensive privilege log identifying those documents.

In light of the clear improper purpose of the Subpoena, the substantial burden of compliance, and the likelihood that it would yield little or no relevant, discoverable information, P&C filed a motion to quash, or in the alternative, for a protective order (the "Motion").  Dkt. 1.  The Magistrate Judge entered a Memorandum Order granting the Motion.  The Memorandum Order contained two principal findings.  First, the Magistrate Judge found that the documents sought by the Modified Requests are not relevant.  Dkt.

---

[3] Thorpe and Hamrick object to the Magistrate Judge's failure to deny the Motion as to a "Modified Request 12."  As described in Section VI below, what Thorpe and Hamrick are referring to is a category of information as to which they explicitly waived all arguments before the Magistrate Judge.  They now belatedly seek to retract that waiver.

17 at 5.  Second, the Magistrate Judge found that P&C demonstrated that compliance with the subpoena would impose a "substantial and undue burden." *Id.* at 5-6.  Thus, the Magistrate Judge found that the burden of discovery outweighed its likely benefit.  Fed. R. Civ. Proc. 26(c).  In light of those findings, the Magistrate Judge did not reach P&C's work product arguments.  Dkt. 17 at 2, 3.

Thorpe and Hamrick now object to the Magistrate Judge's Order in its entirety. But such an objection requires a showing of "clear error"—a standard that Thorpe and Hamrick mistakenly attempt to avoid—and there is no such error here.  The Magistrate Judge was correct in finding that the Subpoena (even as modified) would impose an undue burden that outweighed any likely benefit of the information sought.  Moreover, the fact that Thorpe and Hamrick clearly seek P&C's work product provides an alternative basis for overruling Thorpe and Hamrick's objection.

## III.   THE MAGISTRATE JUDGE'S RULING IS ENTITLED TO GREAT DEFERENCE AND CANNOT BE SET ASIDE ABSENT A SHOWING OF CLEAR ERROR

A party objecting to a magistrate judge's discovery ruling bears a high burden. "A magistrate judge's findings are entitled to great deference … and may be modified or set aside only if found to be clearly erroneous or contrary to law." *Payne v. District of Columbia*, 859 F. Supp. 2d 125, 131 (D.D.C. 2012) (internal quotes and citations omitted); *see also* 28 U.S.C. § 636(b)(1)(A) (where magistrate judge is designated to hear non-dispositive pretrial issues, court may reconsider only upon a showing "that the magistrate judge's order is clearly erroneous or contrary to law"); Fed. R. Civ. Proc. 72(a) (same).  "The burden of demonstrating clear error is a heavy one." *Steven R. Perles, P.C. v. Kagy*, 394 F. Supp. 2d 68, 73 n.10 (D.D.C. 2005).  "To find clear error, [a court] must be left with the definite and firm conviction that a mistake has been committed." *Payne*, 859 F. Supp. 2d at 131, *quoting American Society for Prevention of Cruelty to Animals v. Feld Entertainment, Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011).  "A court 'may not set aside the magistrate's findings of fact simply because [it is] convinced

NON-PARTY P&C'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

that [it] would have decided the case differently.'" *Payne*, 859 F. Supp. 2d at 131,

*quoting American Society*, 659 F.3d at 22.

This deference is particularly strong when a party challenges a magistrate judge's

discovery ruling.  Magistrate judges are given a "great amount of discretion … in making

discovery decisions …." *Moore v. Chertoff*, 2007 U.S. Dist. LEXIS 33684, *11-12

(D.D.C. May 8, 2007).  A district court should not second-guess the magistrate judge's

ruling absent an abuse of that broad discretion.  *See Perles*, 394 F. Supp. 2d at 73 n.10

(citing cases reviewing discovery decisions under abuse-of-discretion standard); *Snowden

v. Connaught Labs., Inc.*, 136 F.R.D. 694, 697 (D. Kan. 1991) ("Because a magistrate is

afforded broad discretion in the resolution of nondispositive discovery disputes, the court

will overrule the magistrate's determination only if this discretion is clearly abused").

Thorpe and Hamrick mistakenly assert that the standard is more forgiving—they

contend that this Court reviews the Magistrate Judge's Order "de novo."  Dkt. 20 at 15,

citing Fed. R. Civ. Proc. 72(b)(3).  But Thorpe and Hamrick misunderstand the law.  Rule

72(b) describes a magistrate judge's authority (and the scope of review of a magistrate

judge's report and recommendation) with respect to "Dispositive Motions and Prisoner

Petitions," *i.e.*, matters referred to a magistrate judge pursuant to 28 U.S.C. §

636(b)(1)(B).  This is not a dispositive motion referred to the Magistrate Judge under

Section 636(b)(1)(B).  Instead, it is a non-dispositive discovery ruling.  And a magistrate

judge's authority to rule on <u>non-dispositive</u> matters—*e.g.*, discovery matters—is

governed by a statute and a rule that permit reversal only where "the magistrate judge's

order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(B); Fed. R. Civ.

Proc. 72(a).  Thus, as set forth above, the Magistrate Judge's Order is entitled to "great

deference," and cannot be modified or set aside absent a showing that the Order was

"clearly erroneous" or "contrary to law"—that is, a showing that the Magistrate Judge

abused her broad discretion to resolve discovery matters. Thorpe and Hamrick have made

no such showing.

IV.    **THE MAGISTRATE JUDGE CORRECTLY FOUND THAT THE BURDEN OF COMPLIANCE WITH THE SUBPOENA WOULD SUBSTANTIALLY OUTWEIGH THE VALUE OF THE DOCUMENTS SOUGHT**

A.    **The Magistrate Judge Correctly Found that Compliance with the Subpoena Would Impose a Substantial and Undue Burden**

The Magistrate Judge found that P&C "has demonstrated—through a declaration which Respondents have not attempted to rebut—that compliance with the subpoena would impose a 'substantial and undue' burden."  Dkt. 17 at 5, citing Dkt. 1-2, ¶ 15-17).  As set forth in the evidence that the Magistrate Judge cited:

> Searches for all documents comprising or relating to (a) communications with C&B, including in the GSK litigation and in other cases in which C&B was P&C's co-counsel or local counsel … (b) communications between P&C and the government concerning the litigation against GSK …, and (c) 'the identities of all P&C attorneys' involved in the litigation against GSK … would require review of the electronic and hard-copy files of 13 out of P&C's 22 current attorneys and at least two staff members who may have responsive information.  P&C additionally would have to recover and search through the files and electronic records—to the extent those records still exist—of at least two former P&C lawyers and over a dozen former P&C paralegals and staff members who might have responsive information.

Dkt. 1-2, ¶ 15.  Thorpe and Hamrick contend that it was error for the Magistrate Judge to rely upon this evidence, because they narrowed their requests after the evidence was provided to the Court.  But that argument is misplaced, because the narrowing did not substantially alter the burden the subpoena would impose upon P&C.  Some of the requests are not modified at all.  For example, Thorpe and Hamrick still seek production of every communication between P&C and C&B concerning the GSK lawsuits.  Dkt. 11 at 15-16, Modified Request 1.  And even if some Modified Requests are now limited to certain subject matter (*e.g.*, "the sufficiency of Thorpe and Hamrick's complaint," *see* Dkt. 11 at 3-4), P&C still must locate, collect, and review every communication with the Government and every internal memorandum to determine whether the content of those documents falls within the narrowed categories.

Moreover, as explained in the evidence that the Magistrate Judge cited:

> [T]he vast majority of the documents that Thorpe and Hamrick seek constitute confidential attorney work product generated in representing P&C's clients in the

> lawsuit against GSK or its clients in other cases in which C&B are co-counsel or local counsel.  Thus, the Subpoena would impose upon P&C a tremendous burden of logging thousands of individual documents referring or relating to communications with C&B or with the government.  P&C either would have to pull attorneys off of pending cases to create this privilege log (thus interfering with P&C's business) or would have to hire outside attorneys to perform this task (thus imposing substantial cost upon P&C).

Dkt. 1-2, ¶ 15 (cited in Dkt. 17 at 5).  Again, this is no less true merely because Thorpe and Hamrick have narrowed some of their requests.  As set forth in greater detail in Section V below, Thorpe and Hamrick still seek principally P&C's work product (*i.e.*, documents prepared by attorneys for the purpose of litigating claims on behalf of P&C's clients).  As a result, as set forth in the evidence the Magistate Judge cited, compliance with the Subpoena would require substantial, and undue, attorney time in reviewing those documents and preparing a privilege log.  Dkt. 1-2, ¶ 17 (cited in Doc. 17 at 5).

As the Order points out, this evidence was uncontroverted.  Dkt. 17 at 5-6 (noting that Thorpe and Hamrick "have not attempted to rebut" the evidence of burden provided by P&C).  Indeed, Thorpe and Hamrick's factual response to P&C's showing of burden consists solely of their counsel's pure speculation, offered belatedly at the hearing on the Motion, that the burden <u>might</u> not be oppressive if P&C performed searches pursuant to instructions that Thorpe and Hamrick have not yet seen fit to provide.  Dkt. 20 at 33. Thorpe and Hamrick's self-serving, conjectural arguments about burden ignored the competent evidence on which the Magistrate Judge relied, ignored the burden imposed by Thorpe and Hamrick's singular focus on P&C's work-product documents, and ignored the fact that Thorpe and Hamrick do not even know how P&C's documents are kept, whether P&C's communications are susceptible to the type of search Thorpe and Hamrick might later propose, or what kind of third-party IT cost such a search would impose.  It was not error for the Magistrate Judge to decline to adopt Thorpe and Hamrick's self-serving, speculative arguments.

In sum, the Magistrate Judge had before her ample competent evidence to support her finding that "compliance with the subpoena would impose a 'substantial and undue'

burden," and <u>no</u> competent evidence to contradict that finding.  The finding was correct, not "clearly erroneous" or "contrary to law," and cannot be set aside or modified.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Proc. 72(a).

**B.**   **The Magistrate Judge Correctly Found that the Documents Sought Were of Limited or No Relevance**

1.   <u>The Magistrate Judge  Correctly Found that the Subpoena Was a Pretext for Seeking Information to Be Used Against P&C</u>

The Magistrate Judge found that the documents sought by Thorpe and Hamrick's subpoena "concern [P&C's] representation of its own clients and its evaluation of potential clients."  Dkt. 17 at 5.  Accordingly, the Magistrate Judge found that "the Subpoena is a naked attempt to gather information for use in evaluating, and perhaps litigating, a claim against [P&C]."  *Id.*

The Magistrate Judge had ample evidentiary support for this filing.  Thorpe and Hamrick themselves did not attempt to hide (at least initially) their intent to use the subpoena to explore potential claims against P&C.  To the contrary, Thorpe and Hamrick stated, in a passage from their opposition brief that the Magistrate Judge quoted in the Order, that "[i]f discovery in the malpractice case against [C&B] uncovers misconduct by P&C, it will be up to Thorpe to decide whether and how to pursue that."  Dkt. 11 at 3; Dkt. 17 at 3.  Moreover, Thorpe and Hamrick openly accused P&C of being "the direct beneficiary of [C&B's] malpractice and cover-up."  Dkt. 11 at 3.  And both the original Subpoena and the supposedly-narrowed Modified Requests primarily sought broad categories of confidential P&C internal documents, internal memoranda, and confidential communications with co-parties <u>other than</u> C&B.  *See* Subpoena (Attached to Dkt. 1), Requests 2, 4-5, 6, 8, 10-12, 14, 16-26, 28; Dkt. 3 at 15-16, Modified Requests 2-9, 11.  Plainly, the focus of Thorpe and Hamrick's Subpoena was and is upon P&C's conduct and upon P&C's evaluation of the risks presented to P&C's clients by the complaint that C&B filed on behalf of Thorpe and Hamrick.

Thorpe and Hamrick contend that the Magistrate Judge's finding was based "exclusively" upon Modified Requests 6-9, which Thorpe and Hamrick withdrew. Dkt. 20 at 3. This is untrue: the Magistrate Judge did not cite or rely upon the withdrawn requests at all. Instead, the Magistrate Judge explicitly relied upon Thorpe and Hamrick's counsel's assertion of "ethical concerns" regarding P&C's representation of its own clients and Thorpe and Hamrick's statement that "it will be up to Thorpe to decide whether or how to pursue" claims against P&C resulting from information obtained as a result of the Subpoena. Dkt. 17 at 2-3. In other words, the Magistrate Judge did not commit the error of which Thorpe and Hamrick complain (reliance upon withdrawn discovery requests); instead, the Magistrate Judge relied upon ample evidence in the record before the Court.

Nor is the Magistrate Judge's ruling that the documents at issue "concern Petitioners' representation of its own clients and its evaluation of potential clients" subject to any reasonable dispute. Even the Modified Requests remaining at issue focus on P&C's conduct and P&C's knowledge. Modified Requests 2-4 seek P&C's communications with the Government and internal memoranda concerning communications with C&B or the Government regarding the sufficiency of Thorpe and Hamrick's complaint—requests transparently aimed at determining, improperly, P&C's evaluation of the legal risks that Thorpe and Hamrick's complaint posed to P&C's clients, P&C's assessment of how the Government was likely to respond to the competing lawsuits, and P&C's strategy for protecting its clients' interests in light of those matters. Dkt. 11 at 15. Modified Request 5 seeks information concerning P&C's acquisition of information from government documents. *Id.* All of those requests explicitly seek information about P&C's "representation of its own clients." And Request 10 seeks information about all unrelated cases in which P&C retained C&B as local counsel, information that necessarily touches upon P&C's representation and evaluation of clients who have no relationship to this lawsuit. In sum, other than

Modified Request No. 1, which seeks only information equally available from C&B itself, all of Thorpe and Hamrick's Modified Requests seek information that "concern[s] [P&C's] representation of its own clients and its evaluation of potential clients." The Magistrate Judge's finding that Thorpe and Hamrick's Subpoena is an attempt to gather information for potential use against P&C was correct, not "clearly erroneous."

> 2.   The Magistrate Judge Correctly Found that P&C's Communications with the Government (Modified Requests 3-5 and 11) Are Not Relevant

As Thorpe and Hamrick themselves explain, the malpractice suit in which they served the Subpoena is based upon their allegation that C&B "negligently prepare[d]" Thorpe and Hamrick's original complaint (by failing to include certain claims that P&C's clients later asserted), and that C&B negligently or fraudulently negotiated the Relators' Share Agreement, which (according to Thorpe and Hamrick) resulted in their recovery of only $74 million as a reward for acting as whistleblowers, instead of the $150 million to which they claim they were entitled. Dkt. 20 at 5-8. Thorpe and Hamrick also claim that C&B lied to them about the terms of a protective order, though they fail to explain how this relates to their malpractice claims. *Id.* at 8.

As the Magistrate Judge recognized, P&C "is not a party to the civil action now pending in the District of Massachusetts, and did not represent either [Thorpe or Hamrick] during the *qui tam* action; rather, [P&C] represented two other relators who alleged overlapping claims." Dkt. 17 at 2. Because P&C is not a defendant and never represented Thorpe and Hamrick, P&C's conduct, the work that P&C performed for its clients, and P&C's opinions and analyses are not at issue in this lawsuit.

Instead, to succeed on their pending malpractice claim, Thorpe and Hamrick must prove that "(1) [C&B] owed a duty of care to the client; (2) [C&B] breached that duty; and (3) by breaching [its] duty, [C&B] proximately caused damage to the client." *Hopp & Flesch, LLC v. Backstreet*, 123 P.3d 1176, 1183 (Colo. 2005). Thorpe and Hamrick's claims, accordingly, require an evaluation of the facts concerning C&B's conduct,

including whether the original complaint that C&B filed was sufficient, whether it was the first-filed complaint with respect to particular claims, and whether the Relators' Share Agreement was competently and properly negotiated.  To the extent that Thorpe and Hamrick somehow premise their malpractice claims upon alleged misrepresentations about the meaning of a protective order in the GSK Lawsuits, their claims may also require examination of that protective order and of C&B's communications relating to it.

But while the facts underlying "first-to-file matters, the quality of C&B's services, and the fee dispute [between C&B and Thorpe and Hamrick]" may be relevant in the underlying matter, P&C is not in possession of any facts about those issues beyond those already in Thorpe and Hamrick's possession.  Thorpe and Hamrick already have all of the relevant facts concerning the filing of both their complaints and the complaints of P&C's clients, and they (and not P&C) have all of the underlying facts about what services C&B performed, the quality of C&B's services, and their fee dispute with C&B.  Not surprisingly, Thorpe and Hamrick's Subpoena is not aimed at discovery of facts that are otherwise unavailable to them.  Instead, they seek P&C's opinion and analysis regarding those facts.  But P&C is neither a party nor an expert in their litigation, and P&C's opinions and analysis are irrelevant.  Evidence of P&C's legal analysis, P&C's opinions, and P&C's strategy—*i.e.*, evidence of P&C's advocacy on behalf of its clients—cannot make any "fact of consequence" relating to the quality of C&B's services "more or less probable than without the evidence."  Fed. R. Evid. 401.  Thus, P&C's work product falls outside the scope of discovery.  Fed. R. Civ. Proc. 26(b)(1); *see also Andrades v. Holder*, 286 F.R.D. 64, 66 (D.D.C. 2012) ("[a] showing of relevance can be viewed as a showing of need; … one is presumed to have no need of a matter not relevant to the subject matter involved in the pending action") (internal quotes and citations omitted).

Thorpe and Hamrick's insistence upon obtaining correspondence that cannot shed light on the facts at issue in their lawsuit, but that necessarily will reveal P&C's opinions

and analysis, corroborates the Magistrate Judge's findings concerning the motive for their Subpoena.  Thorpe and Hamrick are not seeking facts concerning the quality of C&B's work.  Instead, they are seeking P&C opinions and analysis that they hope may be useful in evaluating or prosecuting a case against P&C.  But P&C's opinions and analysis are neither admissible nor relevant in the pending malpractice action.

The Magistrate Judge accordingly had ample basis to conclude that P&C's communications with the Government (and P&C's internal memoranda concerning those communications) are "of no conceivable relevance in the context of the action now pending …."  Dkt. 17 at 5.  Because that finding is not "clearly erroneous" or an abuse of the Magistrate Judge's discretion, the Court should not set it aside.

3.   <u>The Magistrate Judge Correctly Found that P&C's Internal Memoranda Concerning Communications with C&B (Modified Request 2) Are Not Relevant</u>

Thorpe and Hamrick's Modified Request No. 2 seeks production of P&C's internal memoranda "reflecting or referring to any communications between P&C and C&B" on various topics.  As set forth below, Modified Request No. 2 seeks only paradigmatic work product—confidential documents prepared by an attorney in anticipation of litigation—that Thorpe and Hamrick erroneously assert is discoverable merely because P&C is not a party in this lawsuit.  But even apart from the fact that P&C's work product is not discoverable, the Magistrate Judge correctly ruled that the value of the information sought (if any) does not warrant the burden that the Subpoena imposes.  Thorpe and Hamrick have simply made no showing that a search through P&C's confidential work product is likely to yield <u>any</u> discoverable factual information concerning their claims beyond the information already available from the documents produced by the parties themselves.  Indeed, even if Thorpe and Hamrick had provided evidence to the Magistrate Judge suggesting that C&B had lost evidence of email communications with P&C (and, as described in Section IV.B.4 below, Thorpe and Hamrick did not make any such showing), there is no basis, beyond pure speculation, to

believe that evidence of such lost email communications could be obtained by an intrusive search through P&C's internal work-product memoranda.  Accordingly, the Magistrate Judge was correct, and did not abuse her discretion, in finding that the likely value of this information did not warrant the burden that Thorpe and Hamrick seek to impose.

        4.      The Magistrate Judge Correctly Found that the Burden of Producing Communications with C&B (Modified Requests 1 and 10) Outweighed the Likely Benefit of Production

As P&C demonstrated in its opening and reply briefs (Dkt. 1 at 11-12, Dkt. 14 at 3-6), a subpoena to a third party seeking documents that should be available from a party is "unreasonably cumulative or duplicative" and is "unduly burdensome" unless the subpoenaing party makes a "showing that the information sought is not available from other sources."  *Burlodge Ltd. v. Standex Internat'l. Corp.*, 257 F.R.D. 12, 19 (D.D.C. 2009); *see also* Fed. R. Civ. Proc. 26(b)(2)(C)(i) (court must limit discovery if it is "unreasonably cumulative or duplicative"); *Education Finance Council v. Oberg*, 2010 U.S. Dist. LEXIS 102221, *8 (D.D.C. Mar. 9, 2010) (subpoena "imposes an undue burden on EFC because it appears that many, if not all, of EFC's communications with the defendants are available from the defendants to the underlying litigation themselves"); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (D.D.C. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant"); *Wyoming v. U.S. Dept. of Agriculture*, 208 F.R.D. 449, 454 (D.D.C. 2002) (communications sought from third party "would be in the hands of the … defendants, and thus intrusion into the activities of the non-party witnesses is unwarranted and unnecessarily burdensome").  Thorpe and Hamrick cite no contrary law from this circuit.[4]

---

[4] The only cases that Thorpe and Hamrick cite that purport to be contrary to the rule in this District are *Coffeeville Res. Ref. & Mktg. LLC v. Liberty Surplus Ins. Corp.*, 2008 U.S. Dist. LEXIS 91224, *5 (E.D. Ark. Nov. 6, 2008), and *Software Rights Archive, LLC*

Instead, Thorpe and Hamrick argued before the Magistrate Judge, and repeat here, that they are entitled to impose upon P&C the burden of searching for and producing P&C's correspondence with C&B because, they speculate, "all communications between P&C and C&B are not available from C&B."  Dkt. 3 at 32.  But that statement is utterly without evidentiary support.

As an initial matter, Thorpe and Hamrick improperly rely here upon voluminous evidence that was not before the Magistrate Judge.  *See* Dkt. 20 at 12 (relying upon "information [provided] orally to the Court at argument" by Thorpe and Hamrick's counsel); *id.* at 13 (describing "additional evidence" not presented to the Magistrate Judge).  Thorpe and Hamrick assert that their reliance on evidence not submitted to the Magistrate Judge is permissible under Federal Rule of Civil Procedure 72(b)(3).  But Thorpe and Hamrick again misunderstand the rules governing the review of magistrate judges' decisions.  Rule 72(b)(3) is inapplicable here because it applies only when magistrate judges issue reports or recommendations on "Dispositive Motions [or] Prisoner Petitions" referred to them under 28 U.S.C. § 636(b)(1)(B).  Fed. R. Civ. Proc. 72(b).  Rule 72(a), which contains no authorization to consider evidence not submitted to a magistrate judge, applies where, as here, a magistrate judge resolves a "pretrial matter not dispositive of a party's claim or defense."  Fed. R. Civ. Proc. 72(a).  Accordingly, in

---

*v. Google, Inc.*, 2009 U.S. Dist. LEXIS 43835 (D. Del. May 21, 2009).  To the extent that those cases disagree with the cases from this District cited above, the Court should follow the law of this District and the Federal Rules, which require a court to prevent "unreasonably cumulative or duplicative" discovery.  Fed. R. Civ. Proc. 26(b)(2)(C)(i)).  In any event, neither of the foreign cases Thorpe and Hamrick cited support their argument.  In *Coffeeville*, the court declined to require the subpoenaing party to first seek documents from the opposing party (rather than from a third party) because that issue already was before the court in which the action was pending, and thus would soon be resolved by that court.  *Coffeeville*, 2008 U.S. Dist. LEXIS 91224 at *6-7.  And in *Software Rights Archive*, the Court compelled production largely because the subpoena recipients "actually ha[d] an interest in the outcome of the case"—they owned and controlled a party to the underlying litigation, and thus were practically, if not formally, parties to the litigation.  Here, P&C has no interest in the underlying suit, and Thorpe and Hamrick do not contend otherwise.

this District, as elsewhere, "new evidence should not bear upon a review of the decision reached by the magistrate judge based on the evidence she did have before her." *Payne*, 859 F. Supp. 2d at 131 n.6 (holding that submission of new evidence in objection to magistrate judge's ruling is improper, but permitting limited exception where both parties submitted new evidence and therefore "neither should be heard to complain"); *see also Nathan v. Ohio State Univ.*, 2013 U.S. Dist. LEXIS 4275, *10-11 (S.D. Ohio Jan. 10, 2013) (holding, in addressing objections to discovery ruling, that "[i]t is inappropriate to offer new evidence at the time objections are filed," and that a party cannot establish that a magistrate judge erred "by citing evidence that was not before the Magistrate Judge for consideration").  Thus, this Court should not consider any new evidence that was not timely and competently presented to the Magistrate Judge.

In any event, the Magistrate Judge had ample basis for her finding that the burden of searching P&C's records for communications between P&C and C&B substantially outweighed the likely value of such a search.  Thorpe and Hamrick have still not provided any evidence that C&B's document production is likely to be missing any communications between P&C and C&B.  First, the parties to the malpractice action dispute whether C&B retained all of its <u>internal</u> emails (*i.e.*, email communications between the two partners in the firm)—a dispute that has nothing whatsoever to do with C&B's retention of <u>external</u> communications with P&C.  Dkt. 11-1, Ex. C, ¶ 7-26. Second, at the time that the Magistrate Judge ruled on Thorpe and Hamrick's motion, Thorpe and Hamrick claimed to have discovered only a single email (between C&B and its clients, not an email between C&B and P&C) missing from C&B's document production.  *Id.*, ¶ 28.  Even the "new evidence"—which was not before the Magistrate Judge, and which this Court accordingly should not consider—purports only to identify problems with C&B's retention of communications with Thorpe and Hamrick.[5]  Thorpe

---

[5] Thorpe and Hamrick also provide, as part of the "new evidence" they improperly

and Hamrick have not submitted any evidence, either to the Magistrate Judge or to this Court, suggesting that C&B failed to retain and produce all communications with P&C.

Nor have Thorpe and Hamrick established, despite their reliance upon *Viacom Internat'l. Inc.v. YouTube, Inc.*, 2008 U.S. Dist. LEXIS 79777 (N.D. Cal. Aug. 18, 2008), that C&B's record-keeping practices were so shoddy as to warrant the burden of redundant discovery.  In *Viacom*, the court held that third-party production may be warranted where "there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions," 2008 U.S. Dist. LEXIS 79777 at *10, a standard similar to this District's requirement that the subpoenaing party make a "showing that the information sought is not available from other sources." *Burlodge*, 257 F.R.D. at 19.  In *Viacom*, however, the subpoenaing party met that burden by establishing "poor initial record keeping" by the party.  *Viacom*, 2008 U.S. Dist. LEXIS 79777 at *7.  It did so by pointing out that the party was "housed initially in a garage, then in various short-term offices," and that discovery had already demonstrated that the party had lost some of its communications with the non-party subpoena recipients.  *Id.* at *7 n.2, *11.  But Thorpe and Hamrick, unlike the subpoenaing party in *Viacom*, have shown neither poor recordkeeping nor examples of gaps in C&B's retention of the documents at issue.  Apart from the dispute over whether C&B maintained copies of its internal emails or of its emails with Thorpe and Hamrick (disputes that do not relate to correspondence with P&C), Thorpe and Hamrick make no

---

submit to this Court, a table purporting to list, by year, the number of communications between P&C and C&B that C&B produced.  Dkt. 20 at 13.  That table is entirely consistent with the completeness of C&B's production of communications between C&B and P&C.  It shows limited communications when C&B and P&C each first learned of each others' cases (2003), slightly more frequent communications as the Government investigated the underlying claims (2004-2007), and even more frequent communications as the Government completed its investigation and began strategizing for the settlement of the lawsuit (2008-2009).  The table does not suggest in any way that C&B deleted any correspondence with P&C.

arguments whatsoever about C&B's recordkeeping practices. C&B's record retention certainly cannot be compared to files haphazardly "housed … in a garage."

And even if Thorpe and Hamrick had any basis for their assertion that C&B might have lost a handful of documents, it would not warrant reversal of the Magistrate Judge's Order.  First, where the request is burdensome, a non-party need not prove that the party in possession of duplicative information had perfect recordkeeping.  The request is unduly burdensome and unnecessarily duplicative if "most, if not all" of the communications sought are equally available from a party.  *Education Finance Council*, 2010 U.S. Dist. LEXIS 102221 at *8-9.  Here, Thorpe and Hamrick do not dispute that "most, if not all" of the communications they seek from P&C have already been produced by C&B—the precise basis for the court's ruling in *Education Finance Council* precluding discovery from a third party.

Second, there is no basis to believe that the documents sought merit the substantial burden that Thorpe and Hamrick seek to impose upon non-party P&C.[6]  The underlying facts upon which Thorpe and Hamrick's claim is based—the work that C&B performed, including the original complaint drafted, and the Relators' Share Agreement that C&B negotiated and that Thorpe and Hamrick claim led to an inadequate $74 million recovery—do not depend upon any communications between P&C and C&B.  It does not matter, for example, what (if anything) P&C argued in those discussions—it is the objective facts concerning the content of the original complaint, and not P&C's advocacy, that is relevant.

_____

[6] Thorpe and Hamrick also argue, based upon improperly submitted "new evidence," that C&B has lost a copy of one retainer agreement in which P&C engaged C&B to act as local counsel.  It was not "clear error" for the Magistrate Judge to find that agreements by C&B to act as local counsel (an arrangement that involves only nominal compensation) in actions wholly unrelated to the facts in this case have "no conceivable relevance" to Thorpe and Hamrick's malpractice action. Dkt. 17 at 5. The notion that C&B gave up its right to a contingency fee on half of the largest *qui tam* recovery in history in order to promote its ability to serve, infrequently, as local counsel in P&C's cases is patently absurd.

In sum, there is simply no basis to speculate that the burdensome document review and production that Thorpe and Hamrick seek to impose upon P&C would yield any relevant information not already contained in the documents that C&B has produced. The Magistrate Judge therefore correctly found that, absent an order from the District of Massachusetts determining that C&B's production was insufficient, the burden Thorpe and Hamrick seek to impose substantially outweighed the likely value of the information sought. That order was well within the Magistrate Judge's broad discretion, and was not "clearly erroneous."

## V.   MODIFIED REQUESTS 2-5 AND 11 SEEK PROTECTED WORK PRODUCT

The Magistrate Judge's Order should be sustained for an independent reason: Although the Magistrate Judge did not address the work product issues raised by Thorpe and Hamrick's subpoenas, the evidence and briefing before the Magistrate Judge demonstrate that the documents that Thorpe and Hamrick seek through Modified Requests 2-5 and 11 are protected by the work product rule.

As set forth in P&C's memoranda (Dkt. 1 at 12-17, 25-30; Dkt. 14 at 7-15), those Requests openly seek work product at the heart of the *Hickman v. Taylor* rule: confidential litigation materials that P&C prepared for the specific purpose of litigating claims on behalf of P&C's clients, Thomas Gerahty and Matthew Burke—litigants who Thorpe and Hamrick describe as "directly adverse" to them in the prior case. Dkt. 20 at 10. This is not a case in which a subpoena only incidentally touches upon work-product documents, or where there are disputes about whether the information was prepared for a non-litigation purpose. Thorpe and Hamrick seek only confidential litigation documents prepared for "directly adverse" parties, which they admit that they will use "to decide whether or how to pursue" claims against P&C. Dkt. 11 at 3, 22. Yet they do not even acknowledge the extraordinary nature of the discovery they seek or the tremendous intrusion upon the attorney-client relationship that it represents. They simply act as if it

is commonplace for lawyers to obtain virtually unlimited access to the litigation work product of former (and potential future) adverse parties and counsel.

P&C's memoranda showed, and Thorpe and Hamrick do not challenge, that the materials sought by Modified Requests 2-5 and 11 are (a) documents; (b) prepared by attorneys for parties in then-active litigation (P&C's clients, Gerahty and Burke; or the government); (c) for the specific purpose of litigating claims on behalf of those parties. Dkt. 1 at 26-30.  There is no dispute, therefore, that the documents at issue are paradigmatic attorney work product at the core of the protection established by *Hickman v. Taylor*, 329 U.S. 495 (1947).

Instead, Thorpe and Hamrick's demand for P&C's work product is based upon three arguments.  First, they contend that P&C's core work product is discoverable because the law purportedly does not protect third-party work product from disclosure. Dkt. 20 at 24-26.  Second, they assert that P&C waived work product protection by disclosing materials to the government, because the common interest among P&C's clients and the government supposedly did not extend to certain topics.  Dkt. 20 at 28-29. Third, they assert, without support, that they have a "substantial need" for P&C's work product.  Dkt. 20 at 29.  Each of these arguments is wrong.

### A.     The Court Should Protect P&C's Third-Party Work Product

In its opening memorandum, P&C established that some courts, including the D.C. Circuit, have applied Rule 26(b)(3) to protect the work product materials of third parties.  Dkt. 1 at 13, citing *In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988) (holding that non-party subpoena recipient had established applicability of the work product doctrine, but remanding for consideration of the requesting party's "substantial need").  Nonetheless, recognizing that some other courts limit Rule 26(b)(3) to the work product of parties to the litigation in which the documents are sought, P&C established, in its opening memorandum, that even courts that find that Rule 26(b)(3) is limited to party work product routinely protect non-party attorney work product under a wide

variety of legal theories.  Dkt. 1 at 13-17.  P&C described four independent bases for protecting P&C's work product in this case.  In the Opposition, Thorpe and Hamrick failed to respond to two of those independent bases (thereby conceding their applicability as a matter of law), and did not rebut the applicability of the other two.

      1.    <u>The Court Should Protect P&C's Work Product Under Rule 26(c)</u>

In its opening memorandum, P&C established that, even if Rule 26(b)(3) is inapplicable to non-party work product, the intrusion upon non-party work product is a cognizable "undue burden" that warrants the entry of a protective order under Rule 26(c). Dkt. 1 at 16-17.  Indeed, "requiring [a third party] to provide its [work product] information to a potentially adverse party … would be 'unduly burdensome' and therefore, unjust."  *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 699 (N.D. Ga. 2007); *see also In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603, *33-34 (E.D. Pa. Nov. 29, 2006) (recognizing the "undue burden of disclosing third-party work product"); *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 772 (M.D. Pa. 1985) ("if a party to litigation is partially protected by Rule 26(b)(3) from having to disclose certain information to an opposing party, it is unduly 'burdensome' and therefore, unjust, to require a non-party to deliver the same kind of information to a party who may subsequently join the non-party in the litigation").  Here, Thorpe and Hamrick make no secret of their intent to assert claims against P&C.  *See* Dkt. 11 at 3, 20 (stating that "if discovery in [this case] … uncovers misconduct by P&C, it will be up to Thorpe to decide whether or how to pursue that"); *id.* at 3, 32 (accusing P&C of being "the direct beneficiary of a cover-up").  Accordingly, P&C moved not only to quash the Subpoena pursuant to Rule 45, but also for a protective order pursuant to Rule 26(c).  *See* Dkt. 1 at 16-17, 27, 30.

Thorpe and Hamrick did not respond to this argument in the Opposition that they filed before the Magistrate Judge.  *See generally* Dkt. 11.  They did not dispute that, as P&C argued, the disclosure of non-party work product is itself an "undue burden" that

warrants the entry of a protective order.  Indeed, Thorpe and Hamrick's Opposition did

not even cite Rule 26(c) or refer to P&C's alternative request for a protective order.  "'If

a party fails to counter an argument that the opposing party makes in a motion, the court

may treat that argument as conceded.'"  *Dorsey v. Executive Office for U.S. Attorneys*,

2013 U.S. Dist. LEXIS 28739, *6 (D.D.C. Mar. 1, 2013), *quoting Day v. D.C. Dept. of

Consumer & Reg. Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002).  And having failed to

assert any argument before the Magistrate Judge, Thorpe and Hamrick cannot do so here.

"Parties must take before the magistrate, 'not only their "best shot" but all of their

shots.'"  *Borden v. Sec'y. of Health & Human Servs.*, 836 F.2d 4, 6 (D.C. Cir. 1987)

(citations omitted) (noting that the purpose of delegation to magistrate judges is to relieve

courts of unnecessary work, and that "[i]t would defeat this purpose if the district court

was required to hear matters anew on issues never presented to the magistrate"); *see also

Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 84, 95 (D.D.C. 2009) (arguments that

"could have been presented earlier to the Magistrate Judge" are waived, and are "an

improper basis for … objections" to the magistrate judge's order).

     Because Thorpe and Hamrick did not dispute or counter P&C's argument that the

"undue burden" of Thorpe and Hamrick's intrusion upon P&C's work product warranted

entry of a protective order pursuant to Rule 26(c), the work product doctrine provides an

independent basis for sustaining the Magistrate Judge's Order excusing compliance with

Modified Requests 2-5 and 11.

2.     The Court Should Protect P&C's Work Product Under Rule 45

     In its opening memorandum (Dkt. 1 at 16), P&C established that, even if Rule

26(b)(3) is inapplicable, Rule 45 itself specifically permits a court to protect non-party

work product.  *Allied Irish Banks, p.l.c. v. Bank of America*, 252 F.R.D. 163, 173

(S.D.N.Y. 2008) (Rule 45 specifically permits non-party to seek protection for work

product); *ASARCO, LLC v. Americas Mining Corp.*, 2007 U.S. Dist. LEXIS 84604, *17

(D. Ida. Nov. 15, 2007) (Rule 45 "protects against discovery of third-party work product

in appropriate cases"); *Carnes*, 244 F.R.D. at 699 ("Rule 45 … suggest[s] that the scope of [work product] protection should extend to a non-party …"); *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603 at *32-33 (Rule 45 "is broad enough to include protection against discovery of third-party work product in appropriate cases"). Accordingly, P&C sought protection for its work product pursuant to Rule 45.  Motion at 1; Opening Br. at 16.

In their Opposition, Thorpe and Hamrick did not refute this basic proposition.  To the contrary, they ignored this argument in its entirety in their briefing before the District Court.  Because Thorpe and Hamrick did not counter P&C's argument that Rule 45 protects P&C's third-party work product, the Court should treat the argument as conceded.  *Dorsey*, 2013 U.S. Dist. LEXIS 28739 at *6; *Day*, 191 F. Supp. 2d at 159; *Borden*, 836 F.2d at 6.  Thus, work product protection under Rule 45 is an independent basis sufficient to sustain the Magistrate Judge's Order excusing compliance with Modified Requests 2-5 and 11.

> 3.   The Court Should Prevent P&C's Work Product from Disclosure to Potential Litigation Adversaries

As set forth in P&C's briefs before the Magistrate Judge (Dkt. 1 at 14-15; Dkt. 14 at 10-12), many courts construe the partial codification in Rule 26(b)(3) to protect materials created by or for entities that might later become adverse to the party seeking work product information, recognizing that to hold otherwise would risk the misuse of the subpoena power.  Although she did not reach the work product issue, the Magistrate Judge herself recognized the importance of this principle.  Dkt. 17 at 5 (finding that 'the Subpoena is a naked attempt to gather information for use in evaluating, and perhaps litigating, a claim against [Phillips & Cohen]' …. No interpretation of Rule 26 can be read to countenance such an effort").  Thorpe and Hamrick cite no contrary authority, and do not dispute this principle.  Instead, they argue that this authority does not prevent the

disclosure of P&C's work product in this case because there is no danger that P&C's <u>clients</u> will become adverse to Thorpe and Cross.  Dkt. 20 at 28.

Thorpe and Cross misunderstand the work product doctrine.  While attorney-client privilege belongs to the client and may be claimed only by the client, the work product doctrine protects both the client <u>and the attorney</u>.  *See In re: Sealed Case*, 29 F.3d 715, 718 (D.C. Cir. 1994) ("'work product privilege belongs to the lawyer as well as the client'"), *citing and quoting In re: Sealed Case*, 676 F.2d 793, 812 n.75 (D.C. Cir. 1982); *see also Solis v. Food Employers Labor Relations Ass'n.*, 644 F.3d 221, 231 (5th Cir. 2011) ("the work product doctrine belongs to the attorney").  Because P&C itself is entitled to the protection of the work product doctrine, the possibility that Thorpe and Hamrick might later sue P&C is no different from the possibility that they might later sue P&C's clients.  Either possibility warrants quashing the Subpoena.  *See*, *e.g.*, *Jean v. City of New York*, 2010 U.S. Dist. LEXIS 2282, *6-7 (E.D.N.Y. Jan. 12, 2010) (extending work product protection to non-party district attorney because "there is at least the possibility of further litigation between the DA and the plaintiff" seeking documents); *Carnes*, 244 F.R.D. 694, 699 (N.D. Ga. 2007) (extending work product protection to non-party who "may be a party to litigation at some point in the future," because it would be "unjust" to require the non-party to provide its work product to a potentially adverse party).

Here, there is no dispute that there is at least "the possibility of further litigation" between P&C and Thorpe and Hamrick.  Thorpe and Hamrick admit as much.  Dkt. 11 at 3, 22 ("If discovery in the malpractice case … uncovers misconduct by P&C, it will be up to Thorpe to decide whether or how to pursue that"); *id.* at 21 (stating that Thorpe and Hamrick contend "that P&C, in fact, misused or mishandled Thorpe's privileged, confidential information").  It would be a gross miscarriage of justice to permit Thorpe and Hamrick to obtain P&C's attorney work product in this case for use in a subsequent action against P&C.  *Zagklara v. Sprague Energy Corp.*, 2011 U.S. Dist. LEXIS 56782,

*6-7 (D. Me. May 26, 2011) ("That possibility is not one that would be countenanced by any court interpreting the work product doctrine or Rule 26(b)(3)"); *Jean*, *supra*; *Carnes*, *supra*.

> 4.   The Court Should Protect P&C's Work Product Under the *Hickman* Rule, Which Is Broader than Rule 26(b)(3)

As set forth in P&C's opening memorandum (Dkt. 1 at 15), "the work-product doctrine articulated in *Hickman* and its progeny … is broader than the protection supplied by Rule 26(b)(3)." *Crosby v. City of New York*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010). Accordingly, non-parties may invoke work product protection when doing so "vindicate[s] the purposes underlying the [*Hickman*] doctrine," *i.e.*, protection of attorneys' ability to formulate legal theories and prepare cases without intrusion from adversaries, preventing opponents from "free-loading" off of adversaries' work, and preventing interference with litigation. *Crosby*, 269 F.R.D. at 277. Thorpe and Hamrick agree. *See* Dkt. 20 at 27.

They contend, however, that the protection of P&C's work product in this case would not serve the purposes underlying *Hickman*, for the sole reason that P&C's clients purportedly would not be harmed by the disclosure. Dkt. 20 at 28. But the work product rule articulated in *Hickman* does not depend upon a case-by-case evaluation of the harm to any particular party from disclosure. Instead, it is focused on protection of the adversary system in general, which would suffer if attorneys had an incentive to limit the scope or candor of their analysis of their clients' cases for fear that adversaries would be able to obtain their work product. *Hickman*, 329 U.S. at 511 ("Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. … Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial"). If, as Thorpe and Hamrick propose, litigants could freely intrude upon the "zone of privacy in which a lawyer can prepare and develop legal theories and strategy," *United States v.*

*Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998), it would do exactly what *Hickman* attempted to prevent—chill the thorough and candid investigation and analysis that is the backbone of the adversary system.

Moreover, Thorpe and Hamrick clearly intend to "freeload" off of P&C's work. Thorpe and Hamrick obviously hope to turn the work that P&C's did on behalf of P&C's own clients to Thorpe and Hamrick's own advantage, the very definition of "freeloading." And if P&C's work product does not support Thorpe and Hamrick's claims (in this case or in potential litigation against P&C), they still will use it to learn P&C's confidential legal theories and to formulate responses to those theories, rather than doing their own work to anticipate potential issues.

Protection of P&C's work product thus serves the interests underlying the *Hickman* rule. The Court therefore should apply the common-law work product rule— which is broader than Rule 26(b)(3)—to protect P&C's work product.

### B.  P&C Did Not Waive Work Product Protection by Disclosure to the Government

Thorpe and Hamrick argue that P&C cannot claim any work product protection for communications with the government because (according to them) the disclosure to the government, who Thorpe and Hamrick assert had no common interest with P&C, somehow waived the work product protection. Dkt. 20 at 28-29. They assert that while P&C did share a common interest with the government in the prosecution of the GSK Lawsuits, it had no such common interest in communications relating to first-to-file matters, the quality of C&B's services, and the fee dispute between C&B and Thorpe and Hamrick.[7]  *Id.*

---

[7] As set forth below, this is irrelevant, since disclosure to the government—with or without a common interest—did not waive work product protections. But it is also untrue. To the extent there were discussions with attorneys in the office for the United States Attorney for the District of Massachusetts concerning the issues described in Modified Requests 3-4, that office's ability to investigate GSK's misconduct was a by-product of, and was enhanced by, the status and participation of P&C's clients as

As an initial matter, this argument applies only to Modified Requests 3, 5, and 11, which seek P&C's correspondence with the Government.  Dkt. 11 at 15-16.  It does not apply to P&C work product that was not provided to the government, including P&C's internal documents that refer or relate to communications with C&B or with the government (Modified Requests 2, 4).

In any event, Thorpe and Hamrick, once again, misunderstand the work product doctrine.  As set forth in P&C's memoranda to the Magistrate Judge (Dkt. 1 at 27-28; Dkt. 14 at 13-14), the work product protection (as opposed to the attorney-client privilege) is not waived by any disclosure to a third party (even one without a "common interest"); instead, it is waived only by a disclosure "inconsistent with the maintenance of secrecy from the disclosing party's adversary."  *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010), *quoting Rockwell Int'l. Corp. v. U.S. Dep't. of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001) and *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).  Irrespective of the topic of P&C's communications with the government, those communications were not "inconsistent with the maintenance of secrecy" from Thorpe and Hamrick, and therefore neither P&C nor the government waived work product protection by communicating with each other.

C.    **Thorpe and Hamrick Cannot Obtain P&C's Work Product Under the "Substantial Need" Exception**

Thorpe and Hamrick, finally, contend that they are entitled to P&C's work product under the "substantial need" exception (Dkt. 20 at 32-33), which provides that certain work product documents may be disclosed upon a showing that a party "has

---

whistleblower-plaintiffs.  Thus, P&C's clients and the United States Attorney's Office for the District of Massachusetts shared a common interest in establishing that P&C's clients had a right to assert their claims and a resulting incentive to assist the government in its investigation.  And Thorpe and Hamrick do not even argue that P&C and the government lacked a common interest as to the documents sought by Modified Request 5, which requests documents related to P&C's review of documents in the prosecution of the litigation.

substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. Proc. 26(b)(3)(A)(ii).

First, this exception is irrelevant. It does not permit the disclosure of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," which must be protected from discovery. Fed. R. Civ. Proc. 26(b)(3)(B). Here, Thorpe and Hamrick do not seek fact work product, *i.e.*, facts gathered during a P&C investigation of the sufficiency of Thorpe and Hamrick's complaint, of first-to-file issues, of the document review project, or of the pending fee dispute. To the contrary, the facts concerning those matters are discrete and already within Thorpe and Hamrick's possession. Instead, Thorpe and Hamrick seek P&C's analysis, opinions, and notes of communications concerning those matters.[8] Dkt. 11 at 15-16, Modified Requests 3-5, 11. That is paradigmatic "mental impression" work product beyond the scope of any "substantial need" exception, and Thorpe and Hamrick are not entitled to it. Fed. R. Civ. Proc. 26(b)(3)(B).

Second, and independently, the "substantial need" exception applies only when "the party shows that it has substantial need" for the documents. Fed. R. Civ. Proc. 26(b)(3)(A)(ii) (emphasis added). But Thorpe and Hamrick have not even attempted any such showing, either here or in their memoranda to the Magistrate Judge. The entirety of

---

[8] In fact, the documents sought in Modified Requests 2 and 4 clearly are not discoverable upon a mere showing of "substantial need." Those Modified Requests seek documents that "reflect or refer" to communications between P&C and the government or C&B, *i.e.*, P&C's attorney notes of those communications. But "substantial need" is not sufficient to warrant disclosure of attorney notes of oral communications. *See Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) (declining to decide whether attorneys' "notes and memoranda" of "oral statements" can ever be discoverable, but holding that "such work product cannot be disclosed simply on a showing of substantial need and inability to obtain …"). Indeed, the D.C. Circuit requires an "extraordinary showing of necessity" before permitting access to mental-impression work product, a standard so stringent that the D.C. Circuit describes such mental-impression work product as "virtually undiscoverable." *In re: Sealed Case*, 676 F.2d at 812 n.75; *United States v. Deloitte LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010). Thorpe and Hamrick do not even argue that they have satisfied any burden greater than "substantial need." Opp. at 31.

their "substantial need" argument consists of the conclusory assertion that they have satisfied their burden, without any reference to evidence and without any explanation whatsoever. Dkt. 20 at 29-30. Thus, the "substantial need" exception cannot apply.

## VI.   THORPE AND HAMRICK IRREVOCABLY WAIVED THEIR ARGUMENT AS TO DOCUMENTS NOT COVERED BY THE MODIFIED REQUESTS ( "MODIFIED REQUEST 12")

In their Objection, Thorpe and Hamrick attempt to revive an argument that they explicitly waived in their submission to the Magistrate Judge—the argument that P&C should produce a work-product letter to the Government containing P&C's legal analysis, which P&C and the Government have always maintained in confidence. Dkt. 20 at 11 n.4. Although Thorpe and Hamrick describe this as "Modified Request 12" in their Objection, *see* Dkt. 20 at 31-32, this is a misnomer: Thorpe and Hamrick included only <u>eleven</u> "Modified Requests" in their Opposition to the Motion. Dkt. 11 at 15-16. They did not assert any arguments anywhere in their brief concerning post-2004 documents other than communications "referring to Plaintiffs' malpractice claim and C&B's fee dispute." *Id.*; *id.* at 24 (describing the scope of the Modified Requests relating to communications with the Government).

As a result, <u>none</u> of the arguments Thorpe and Hamrick now assert in support of their Objection to the Magistrate Judge's ruling as to "Modified Request 12" were raised in the briefing before the Magistrate Judge. P&C had no opportunity to respond to those arguments, and the Magistrate Judge had no opportunity to consider them.[9] It cannot

---

[9] If the issues had been raised, P&C would have established that the letter that Thorpe and Hamrick seek is protected opinion work product for the same reasons that the documents Thorpe and Hamrick seek in Modified Requests 2-5 and 11 are protected, as set forth in Section V above. The letter is a document containing P&C's legal analysis and opinions, created by P&C for the purpose of protecting P&C's clients from Thorpe and Hamrick's competing claims, shared in confidence with the Government in a manner that reasonably protected against disclosure to Thorpe and Hamrick (as evidenced by the fact that Thorpe and Hamrick do not possess the document).

have been "clear error" for the Magistrate Judge to decline to adopt arguments that were never raised before her.

A party cannot assert arguments in an objection to a magistrate judge's order that the party failed to assert in a timely manner before the magistrate judge. "Parties must take before the magistrate, 'not only their "best shot" but all of their shots.'" *Borden*, 836 F.2d at 6 (citations omitted) (noting that the purpose of delegation to magistrate judges is to relieve courts of unnecessary work, and that "[i]t would defeat this purpose if the district court was required to hear matters anew on issues never presented to the magistrate"); *see also Klayman*, 628 F. Supp. 2d at 95 (arguments that "could have been presented earlier to the Magistrate Judge" are waived, and are "an improper basis for … objections" to the magistrate judge's order). The Court accordingly should not even consider Thorpe and Hamrick's argument as to the documents within what Thorpe and Hamrick misleadingly describe as "Modified Request 12."

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, P&C's Motion to Quash, or in the Alternative for Protective Order re: Subpoena should be granted.

Dated: January 6, 2014

/s/
Stephen Hasegawa
  (admitted *pro hac vice*)
PHILLIPS & COHEN LLP
100 The Embarcadero, Suite 300
San Francisco, CA 94105
Tel:  (415) 836-9000
Fax:  (415) 836-9001
Email:  ssh@pcsf.com

Peter W. Chatfield, Esq.
  (D.C. Bar No. 418576)
PHILLIPS & COHEN LLP
2000 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel:  (202) 833-4567
Fax:  (202) 833-1815
Email:  peter@phillipsandcohen.com

Attorneys for non-party subpoena recipient
PHILLIPS & COHEN LLP

## PROOF OF SERVICE

I am employed in San Francisco, California.  I am over the age of 18 and not a party to the within action.  My business address is 100 The Embarcadero, Suite 300, San Francisco, CA 94105.

On January 6, 2014, I served the foregoing documents described as NON-PARTY PHILLIPS & COHEN LLP'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S ORDER upon all parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

**[X]  (By Federal Express)** I enclosed the documents in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at San Francisco, California addressed as indicated on the attached Service List.

**[X] (By ECF)** A true and correct copy of the foregoing document has been served via ECF to the parties as indicated on the attached Service List.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed this 6th day of January, 2014.

/s/
_____
Christine Zengel

NON-PARTY P&C'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

## SERVICE LIST

| | |
|---|---|
| Matthew J. Fogelman<br>Fogelman & Fogelman LLC<br>100 Wells Avenue<br>Newton, MA 02459<br>(617) 559-1530<br>mjf@fogelmanlawfirm.com | Counsel for Plaintiffs/Cross-Defendants Gregory Thorpe and Blair Hamrick<br><br>*[service via FedEx]* |
| William J. Leonard<br>Richard P. Limburg<br>Joseph J. McGovern<br>H. David Seidman<br>Obermayer Rebmann Maxwell & Hippel LLP<br>1617 John F. Kennedy Blvd.<br>Philadelphia, PA 19103<br>(215) 665-3000<br>william.leonard@obermayer.com<br>richard.limburg@obermayer.com<br>joseph.mcgovern@obermayer.com<br>david.seidman@obermayer.com | Counsel for Plaintiffs/Cross-Defendants Gregory Thorpe and Blair Hamrick<br><br>*[service via ECF]* |
| George A. Berman<br>Alan K. Tannenwald<br>Peabody & Arnold LLP<br>Federal Reserve Plaza<br>600 Atlantic Avenue<br>Boston, MA 02210<br>(617) 951-2100<br>gberman@peabodyarnold.com<br>atannenwald@peabodyarnold.com | Counsel of Record as to Plaintiffs' Claims Against Defendants<br><br>*[service via FedEx]* |
| Michael Tabb<br>Greene LLP<br>One Liberty Square, Suite 1200<br>Boston, MA 02109<br>(617) 261-0040<br>matabb@greenellp.com | Counsel of Record as to Defendant Cross & Bennett L.L.C.'s Counterclaim Against Plaintiffs<br><br>*[service via FedEx]* |